## OPINIONS OF THE JUSTICES.

### OPINIONS OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Initiative.

In response to an order of the Senate seeking the opinions of the Justices
upon the question whether a certain initiative petition bearing ap-
proximately thirty-four thousand certified signatures of registered
voters, of which more than one fourth were of voters of each of two
counties, but which were so distributed that the required minimum
number of twenty thousand could be attained without counting more
than five thousand from any one county, was valid under the provision
of art. 48 of the Amendments to the Massachusetts Constitution,
General Provisions, II, "Not more than one-fourth of the certified
signatures on any petition shall be those of registered voters of any
one county," QUA, C.J., and RONAN and SPALDING, JJ., replied in the
negative; and LUMMUS, WILKINS, WILLIAMS, and COUNIHAN, JJ.,
replied in the affirmative.

On May 8, 1950, the Senate adopted, and on May 10,
1950, transmitted to the Justices of the Supreme Judicial
Court, the following order:

WHEREAS, Under date of January fourth, nineteen hun-
dred and fifty, the Secretary of the Commonwealth, under
the provisions of Article XLVIII of the Amendments to
the Constitution "The Initiative. II. Initiative Peti-
tions. Section 4", transmitted to the Clerk of the House
of Representatives an initiative petition, accompanied by
a bill entitled "An Act providing that classifications of
risks and premium charges under the compulsory motor
vehicle liability insurance law shall be uniform through-
out the commonwealth"; and

WHEREAS, Said petition, signed by ten qualified voters,
and with the requisite certificate of the Attorney General
attached, was filed with the Secretary of the Common-
wealth on September eighth, nineteen hundred and forty-

nine; and on December seventh, nineteen hundred and forty-nine, thirty-four thousand and thirty-four subsequent signatures of qualified voters had been filed, a copy of said letter of transmittal, a copy of said proposed law and of said certificate being included in House document numbered twenty-one hundred and thirty-eight of the current year, a copy of which is enclosed herewith; and Whereas, From an inspection of said initiative petition as on file with the Secretary of the Commonwealth it appears that said petition contains thirty-four thousand and thirty-four subsequent certified signatures, the following counties having the following number of certified signatures on said petition:

| Worcester | . | . | . | . | . | . | 72 |
| Plymouth | . | . | . | . | . | . | 827 |
| Norfolk | . | . | . | . | . | . | 7,397 |
| Essex | . | . | . | . | . | . | 7,846 |
| Middlesex | . | . | . | . | . | . | 8,964 |
| Suffolk | . | . | . | . | . | . | 8,928 |

34,034; and

Whereas, Said Article XLVIII, in "General Provisions. I. Identification and Certification of Signatures", provides in part as follows: — Provision shall be made by law for the proper identification and certification of signatures to the petitions hereinbefore referred to, and for penalties for signing any such petition, or refusing to sign it, for money or other valuable consideration, and for the forgery of signatures thereto; and

Whereas, "General Provisions. II. Limitation on Signatures", of said Article XLVIII of the Amendments to the Constitution of the Commonwealth provides as follows: — Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county; and

Whereas, The committee on Insurance to which said initiative petition was referred filed majority and minority

reports thereon, the majority of said committee reporting that the measure ought to pass and the minority of said committee reporting that said petition be rejected, said majority and minority reports being contained in current House document numbered twenty-four hundred and sixty-seven, a copy of which is enclosed herewith; and

WHEREAS, After debate on the question "Upon the enactment of such law in the form in which it stands in such petition" the yeas and nays were taken, as required by said Article XLVIII, and on the roll call seventy-seven members voted in the affirmative and one hundred and thirty-nine in the negative, and therefore the House refused to pass the bill to be enacted; and the bill was sent to the Senate endorsed accordingly, as appears in the Journal of the House, April twelfth, nineteen hundred and fifty, a copy of which is enclosed herewith; and

WHEREAS, Statements as to the purpose of such "Limitation on Signatures" appear on pages 863, 864, 949 and 1045 of Volume II of the Debates of the Constitutional Convention of 1917–1918; and in the case of a referendum under said Article XLVIII it is stated in *Commonwealth* v. *Littleton*, 260 Mass. 423, 425, that this purpose is to make certain that "the petition has substantial support throughout the Commonwealth"; and

WHEREAS, There is grave doubt as to whether said petition is valid and the measure is introduced and pending as provided in said Article XLVIII of the Amendments to the Constitution; therefore be it

ORDERED, That the Opinions of the Honorable the Justices of the Supreme Judicial Court be required by the Senate on the following important question of law:—

1. Is said initiative petition valid and said measure introduced and pending when the number of certified signatures from the counties of Suffolk and Middlesex is in excess of the number of certified signatures prescribed by "General Provisions. II. Limitation on Signatures" of said Article XLVIII of the Amendments to the Constitution of the Commonwealth?

On May 25, 1950, the following answers were returned:

To the Honorable the Senate of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court submit this answer to the question set forth in an order adopted by the Senate on May 8, 1950, and transmitted to the Justices on May 10, 1950. A copy of the order with the documents referred to therein is hereto annexed.

The question submitted relates to the status of an initiative petition filed under art. 48 of the Amendments to the Constitution for a law providing that the classifications of risks and premium charges under the compulsory motor vehicle liability insurance law shall be uniform throughout the Commonwealth. From the recitals in the order and the documents referred to therein it appears that the petition signed by the required ten qualified voters with the certificate of the Attorney General required by art. 48, The Initiative, II, § 3, as appearing in art. 74 of the Amendments, was filed with the Secretary of the Commonwealth on September 8, 1949; that on December 7, 1949, thirty-four thousand thirty-four subsequent signatures of qualified voters had been filed; that on January 4, 1950, the Secretary of the Commonwealth transmitted the petition with the accompanying bill to the clerk of the House of Representatives as required by The Initiative, II, § 4; that in his letter of transmittal he stated that the "34,034 subsequent signatures of qualified voters had been filed" but did not indicate how many of them were of any one county; that after reference to a committee the members of which filed majority and minority reports, the House, voting by yeas and nays as required by V, § 1, refused to pass the bill to be enacted; that the bill was sent to the Senate indorsed accordingly; and that from an inspection of said initiative petition "as on file with the Secretary of the Commonwealth" it appears that the county of Middlesex has eight thousand nine hundred sixty-four certified signatures and

the county of Suffolk eight thousand nine hundred twenty-eight, each number being more than one fourth of the certified signatures on the petition.

The question submitted is this: "Is said initiative petition valid and said measure introduced and pending when the number of certified signatures from the counties of Suffolk and Middlesex is in excess of the number of certified signatures prescribed by 'General Provisions. II. Limitation on Signatures' of said Article XLVIII of the Amendments to the Constitution of the Commonwealth?"

Article 48 of the Amendments under the heading The Initiative in V, § 1, prescribes that the number of signatures of qualified voters on such a petition shall be "not less than twenty thousand." Part II, § 3, as appearing in art. 74 of the Amendments, relates to the signing of initiative petitions and to their filing with the Secretary of the Commonwealth. Section 4, immediately following, reads, "Section 4. Transmission to the General Court. — If an initiative petition, signed by the required number of qualified voters, has been filed as aforesaid, the secretary of the commonwealth shall, upon the assembling of the general court, transmit it to the clerk of the house of representatives, and the proposed measure shall then be deemed to be introduced and pending." If § 4 stood alone it would seem that any initiative petition signed by the required number of qualified voters and transmitted by the Secretary of the Commonwealth would be legally "introduced and pending." But under the heading General Provisions, II reads: "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county." It is plain that the general provision last quoted is intended to qualify the portions of the amendment that have gone before. The reason for this was stated in *Commonwealth* v. *Littleton*, 260 Mass. 423, at page 425, to be "to make certain that the petition has substantial support throughout the Commonwealth before submitting the question to popular vote." This purpose appears from

Debates in the Massachusetts Constitutional Convention of 1917–1918, at Volume II, pages 863–870.

The real question here involved seems to us in substance to be whether the words of this provision that not more than one fourth of the certified signatures "on any petition" shall be those of registered voters of any one county are to be read literally to mean exactly what they say, or whether it is permissible to disregard signatures in excess of the minimum number absolutely required, choosing the signatures to be disregarded from the several counties in such a manner as to leave the remaining minimum number of signatures so divided that not more than one fourth of them shall be of the voters of any one county. It would seem strange if such simple words should be construed as calling for such computation. The question is one of the construction of the words of the Constitution. If the meaning of these words is plain and they are not controlled by other words or by some clear demonstration that they are not to be taken in a literal sense, the plain literal meaning must prevail. *Attorney General* v. *Methuen,* 236 Mass. 564, 572–573. The undersigned Justices are unable to discover any other controlling words or to perceive any clear demonstration that the literal meaning is not the true meaning. It is beyond doubt that when art. 48 was adopted it was contemplated that an initiative petition for a law might contain more than the required number of names. The Initiative, V, § 1, speaks of "not less than twenty thousand qualified voters" and "not less than five thousand signatures of qualified voters." Similar language is found in IV, § 2, relating to legislative action on amendments to the Constitution, in V, § 2, relating to amendments to measures, and in The Referendum, III, §§ 3 and 4, relating to referendum petitions. In spite of this recognition that a petition might contain more than the required number of names the draftsman inserted in II of General Provisions, and the people adopted, the provision that "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county." The words "the certified sig-

natures on any petition" necessarily refer to the signatures actually "on" any petition — that is, those actually certified and filed. Those words are incapable of meaning any lesser number than the number of those certified and filed, even though a lesser number might have been sufficient. The word "any" cannot be construed out of the sentence. Meaning must be given to it. It admits of no exceptions. It refers to a petition that contains more than the required number of names as well as to one that contains only the required number, if a petition containing only the required number is practically possible at all. Indeed it must have been anticipated that most petitions would contain some names in excess of the number required.

The literal construction may render the provision slightly more difficult of compliance, but it does not render compliance impossible or impractical. There may well have been reasons why the requirement of dispersion should have been applied proportionately to all petitions alike. It might have been thought that if proponents of measures desired to avail themselves of the impression upon legislators and the public of massive petitions they should demonstrate a corresponding breadth of demand among the counties of the Commonwealth, and that in no case should a petition be overweighted with the special interests of a particular locality. At any rate, we cannot say that this was not so. We should assume that the provision was carefully drafted to mean what was intended. We cannot convince ourselves that it was intended that a petition of one hundred thousand names of which eighty-five thousand should come from the county of Suffolk and five thousand should come from each of three other counties should be deemed good through a mental process of striking out eighty thousand names, all rom Suffolk, and none from any other county, and keeping he remaining five thousand from Suffolk. We do not see how the words of General Provisions, II, can be so read as to permit this.

Since in our view the petition was invalid by reason of violation of the one fourth rule, the Secretary of the Com-

monwealth could not, by transmitting it to the clerk of the House of Representatives, cause it to "be deemed to be introduced and pending." No power is given to the Secretary to make final determination that a petition is a proper one to be acted upon by the Legislature. Compare *Anderson* v. *Secretary of the Commonwealth*, 255 Mass. 366, 369. General Provisions, I, of art. 48 of the Amendments says in part, "Provision shall be made by law for the proper identification and certification of signatures to the petitions hereinbefore referred to." Accordingly, the Legislature has by G. L. (Ter. Ed.) c. 53, § 22A, as most recently amended by St. 1948, c. 596, enacted that "The provisions of law relative to the signing of nomination papers of candidates for state office, and to the identification and certification of names thereon and submission to the registrars therefor, shall apply, so far as apt, to the signing of initiative and referendum petitions and to the identification and certification of names thereon . . .." The law relative to the signing of nomination papers for State offices requires that every voter shall both sign his name and state his residence, and that the registrars of the cities and towns where the signers appear to be voters shall check and certify the signatures. G. L. (Ter. Ed.) c. 53, § 7, as most recently amended by St. 1943, c. 334, § 3. There is, of course, in this legislation no provision purporting to authorize any officer to certify the number of signers of an initiative petition who are "voters of any one county," but there are provisions which make it possible to determine that fact from the petition itself and the signatures thereon by a simple, if tedious, process of computation. We think resort may be had to the petition for that purpose.

The undersigned Justices are of opinion that for the reasons stated, upon the facts recited in the order, the initiative petition referred to was not valid and was not introduced and pending. We answer the question "No."

STANLEY E. QUA.
JAMES J. RONAN.
JOHN V. SPALDING.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court in reply to your order of May 8, 1950, respectfully submit this answer to the question therein contained.

In our opinion the answer to the question submitted should be "Yes."

The provision in question reads, "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county." Art. 48 of the Amendments to the Constitution, General Provisions, II. As was rightly said in *Commonwealth* v. *Littleton*, 260 Mass. 423, 425: "Its purpose is to make certain that the petition has substantial support throughout the Commonwealth before submitting the question to popular vote." That it is to be given a reasonable construction is axiomatic.

The issue now is whether this provision has a further purpose to make certain that the petition does not have relatively too much support in any one county in the sense that the petition must fail if by actual count of all the signatures certified locally and filed with the Secretary of the Commonwealth it should eventuate that more than one fourth are from a single county. We think that this provision does not have such an effect, but merely indicates a purpose to limit the number of certified signatures which can be counted in order to attain the required total — in this case twenty thousand — to not more than one fourth of that total in any one county. For example, on the present petition the thirty-four thousand thirty-four subsequent signatures are from the following counties: Worcester seventy-two; Plymouth eight hundred twenty-seven; Norfolk seven thousand three hundred ninety-seven; Essex seven thousand eight hundred forty-six; Middlesex eight thousand nine hundred sixty-four; and Suffolk eight thousand nine hundred twenty-eight. In our opinion the provision limits the number of certified signatures to be counted to five thousand from a

single county with the result that there are available to be counted the following: Worcester seventy-two, Plymouth eight hundred twenty-seven, the other four counties five thousand each, or a total of twenty thousand eight hundred ninety-nine.

In so far as anything material to the issue is to be found in Debates in the Massachusetts Constitutional Convention of 1917–1918, we think it supports the view we take. See Volume II at page 868.

A negative answer to the question submitted would involve practical objections so serious that we cannot believe that that result could have been intended, particularly in a constitutional amendment designed to safeguard popular rights. See art. 48, I, Definition.

The words "certified signatures on any petition," we agree, refer to those actually certified and filed with the Secretary of the Commonwealth. Yet there is nothing expressly said in General Provisions, II, about filing, and a strict literal interpretation of "any petition" might lead to the invalidation of a petition immediately upon certification by the various local registrars. But the reasonable construction being that the prohibition in General Provisions, II, affects only filed petitions, it would be possible to forego local certification of large numbers of names, or to withhold their filing after such certification, even though a vast preponderance of the names should be from a single county. A petition of one hundred thousand names, of which eighty-five thousand are from Suffolk County, could be filed in the form of twenty thousand signatures by omitting to file eighty thousand of the Suffolk names, and yet would escape invalidation even under a close, literal interpretation of "certified signatures on any petition." If it be supposed that the people in adopting the initiative and referendum amendment thought there was any evil in relatively too much support in one county, it is strange that the language used is applicable only to the certified signatures in their ultimate stage as filed with the Secretary of the Commonwealth.

Another practical difficulty has to do with the issuing of blanks for subsequent signers. In several places in art. 48 appear the words, "The secretary of the commonwealth shall provide blanks for the use of subsequent signers . . .." The Initiative, II, Initiative Petitions, § 3. The Referendum, III, Referendum Petitions, §§ 3, 4. We see no reason to suppose that these blanks, which are provided at the expense of the Commonwealth, can be issued only to the ten original signers or at their request. If the test of validity or invalidity under General Provisions, II, is the presence on file in the office of the Secretary of the Commonwealth of certified names from one county amounting to more than one fourth of the total of all names filed, opponents of a petition, or even its misguided friends not associated with the original signers, could sabotage or wreck a measure by insisting upon obtaining blanks for the use of subsequent signers, and overloading the petition with a large number of certified signatures filed from a single county. In other words, there is not necessarily one group which can control the procedure or limit the number of certified names filed. Should it be thought that the penalty of invalidation ought to be visited upon a petition with relatively too much support in one county, there would be no sure means of avoiding it. The outcome could resemble a lottery. We think that it was not intended that the exercise of the popular right of the initiative or the referendum thus might be jeopardized by procedure.

A petition of two thousand certified names from each of ten counties admittedly would be valid. We fail to see in General Provisions, II, an intent to invalidate such a petition and to disfranchise its twenty thousand signers in the event that one hundred thousand certified names from an eleventh county should also be filed.

We mention the only other construction which has been suggested, namely, that not more than one fourth of the total certified signatures should be counted from one county and all in excess of that number are to be disregarded. On this theory a petition consisting of eighty thousand certified

signatures from a single county would be valid. As this would be inconsistent with what was said in the *Littleton* case, we cannot adopt it.

We are of opinion that the initiative petition, the subject of the question submitted, is valid.

> HENRY T. LUMMUS.
> RAYMOND S. WILKINS.
> HAROLD P. WILLIAMS.
> EDWARD A. COUNIHAN, Jr.