WALTER P. GIBBONS vs. STATE BALLOT LAW COMMISSION &
others
(and a companion case[1]).

Suffolk. June 15, 1982. — August 31, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Referendum. *Elections*, Validity of petition.

The filing of a referendum petition which lacked a sufficient number of
valid signatures was not an obstacle to the filing of a second petition by
substantially the same persons within the constitutional time period.
[346-347]

Initial improper registration of a voter who had signed a referendum
petition did not invalidate his signature on a second referendum peti-
tion showing his residential address from which he was then properly
registered to vote. [347]

Where a certificate from the appropriate registrars of voters had been sub-
mitted with a referendum petition for a voter signing the petition, fail-
ure to submit a certificate with a second referendum petition signed by
the voter and filed eleven days after the first petition was an immaterial
omission and did not invalidate the voter's signature on the second
petition. [347]

The fact that petition blanks distributed for subsequent signatures for a
referendum petition included among the required names of the first
ten signers of the petition the names of two who had not in fact signed
the petition and the name of one who was improperly registered did
not invalidate the referendum petition where there was no fraud or
misrepresentation and where there was no reasonable basis for con-
cluding that the improper inclusion of three names out of ten on the
petition forms materially affected either the number of signatures ob-
tained or the attitude of the persons who signed the forms. [347-350]

TWO CIVIL ACTIONS commenced in the Superior Court De-
partment on February 9 and March 31, 1982, respectively.

[1] The companion case is also brought by Gibbons against the State Bal-
lot Law Commission. He also named as defendants in this action "the ten
signers" of the referendum petition. These ten individuals were allowed
to intervene in each action.

The cases were heard by *Irwin*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Evans J. Carter* for the plaintiff.

*William A. McDermott, Jr.,* for the interveners.

*Alexander G. Gray, Jr.,* Assistant Attorney General, for State Ballot Law Commission.

WILKINS, J.   We have before us two consolidated appeals from decisions of the State Ballot Law Commission (commission).   The commission rejected various challenges to a petition seeking to place on the ballot for the November, 1982, election the referendum question whether St. 1981, c. 571, commonly known as the "Bottle Bill," should be repealed.   The Bottle Bill requires that, effective January 17, 1983 (St. 1981, c. 571, §§ 1 and 5), a refundable deposit be paid for certain beverage containers sold in Massachusetts.

On December 3, 1981, within thirty days[2] of the November 16, 1981, enactment of the Bottle Bill over the Governor's veto, a group of people filed with the Secretary of the Commonwealth documents purporting to be a petition for a referendum on the bill.   Irregularities in this first petition became apparent, and, on December 14, 1981, substantially the same persons filed a second petition with the Secretary of the Commonwealth.   On December 28, 1981, the plaintiff, a registered voter in Boston, filed an objection to both petitions with the commission.   In this challenge, which we shall call the first challenge, the plaintiff claimed that the petitioners had no right to file a second petition and that neither petition was signed by "ten qualified voters of the commonwealth," as required by art. 48, The Referendum, III, § 4.

The commission, acting through three of its five members, held a hearing.   It decided, on February 5, 1982, that (a) the first petition had not been signed properly by ten qualified voters and (b) four of the fourteen persons who

[2] See art. 48 of the Amendments to the Constitution of the Commonwealth, as amended by art. 74, § 3, and art. 81, § 5, of the Amendments.

purported to sign the second petition were disqualified, but that there were exactly ten qualified voters who had signed the second petition properly. The commission indicated, as to the second petition, that the proponents of the referendum could undertake to complete the referendum process by filing additional signatures of qualified voters not later than ninety days after the enactment of the Bottle Bill. One of the actions on appeal is the plaintiff's challenge, pursuant to G. L. c. 30A, to this decision of the commission. See G. L. c. 55B, § 4. On or before the constitutional deadline of February 16, 1982, the petitioners filed 70,715 additional signatures with the Secretary of the Commonwealth, a number more than adequate to qualify the inclusion of the referendum on the ballot.

The plaintiff presented a second challenge to the commission on March 11, 1982, on the ground that the blank petition forms for use in obtaining subsequent signatures were invalid because they set forth the names and addresses of the "first ten signers," three of whom the commission had ruled in the plaintiff's first challenge were not properly qualified. The Secretary of the Commonwealth prepared the blanks before the commission's February 5, 1982, decision on the first challenge. Indeed, he had to do so because, by statute (G. L. c. 53, §§ 7, 22A), the completed forms had to be submitted to local registrars of voters for certification by February 2, 1982. On March 30, 1982, the commission decided that the second referendum petition was not invalid just because the names of the three persons who were not qualified voters had been printed on the blanks used to obtain additional signatures. It ruled that, where ten qualified voters had signed the second petition, it did not matter that some of the "first ten signers" were disqualified. The commission concluded further that there was no showing of fraud and that it should not treat the valid signatures as contaminated by the invalid ones. The plaintiff filed another complaint seeking review, pursuant to G. L. c. 30A, of this second decision of the commission.

A judge of the Superior Court heard the two complaints for judicial review of the commission's action, and affirmed the commission's decisions. Judgment was entered accordingly on April 28, 1982. We granted the plaintiff's application for direct appellate review, heard argument on June 15, 1982, and entered an order that day affirming the judgments of the Superior Court, indicating that an opinion or opinions would follow. This opinion is in explanation of that order.

## The First Challenge

The plaintiff argues three objections to the lawfulness of the referendum petition that arise out of his first appeal to the commission. They all relate to certain deficiencies in the procedures followed by the proponents of the referendum petition. None of these three challenges has merit.

(a) The first argument focuses on the filing of two petitions by substantially the same individuals. The first petition clearly lacked the signatures of ten qualified voters. The proponents took note of this fact within the time period for the filing of a referendum petition and filed a second one. The commission's comments on this challenge, which we quote in the margin, are dispositive.[3] There is no reason to deny proponents of a referendum petition the opportunity, within the constitutional time period, to correct any unintentional deficiencies in their presentation. The initial petition was not fraudulent. It was simply inadequate, but

[3] "However, no authority of which we are aware forbids the filing of a second original referendum petition, even by the same signers. This is especially so if the first contained an insufficient number of valid signatures, as we have ruled.

"No problem of double 'voting' or double counting arises. First, the respondents seek only to accomplish a single act, namely to qualify an original referendum petition. Moreover, if the first petition failed, no obstacle can logically exist to the filing of a second within the proper time. The respondents seek to have valid signatures counted not twice, but once. It is as if a voter signed the same candidate's nomination paper twice, the first time improperly, the second time correctly. Surely, the second signature would be entitled to certification. *See* G. L. ch. 53, § 7."

the defects were not beyond correction through a second petition.

(b) Vincent J. Lombardo signed each petition, and the commission ruled that he was one of the ten qualified voters who signed the second petition. At the time he signed the first petition, he was registered as a voter in Boston using a business address. Lombardo's registration to vote from a business address, rather than from his residential address, was improper. G. L. c. 51, § 3. On December 10, 1981, prior to the filing of the second petition, he registered to vote, using his Boston residential address. Lombardo's initial improper registration did not invalidate his second signature which showed his residential address, from which he was then registered to vote. There was no fraud. The defect was cured, and Lombardo's signature on the second petition was properly counted.

(c) Lawrence A. Cellucci was one of the ten qualified, registered voters who signed the second petition. A certificate for Cellucci from the appropriate registrars of voters was not submitted with the second petition. However, he had signed the first petition, and an appropriate registration certificate had been filed with the first petition. The commission ruled that the certificate filed with the first petition could be considered with the second. The commission found that Cellucci had been a registered voter in Arlington since 1979 and that he was properly certified as a voter there. We agree with the commission's conclusions. Considering that only eleven days passed between the filing of the two petitions, the certificate filed with the first petition certainly met the purpose of filing a registration certificate. Cellucci's registration was shown to be continuously in effect at the address shown on the certificate, and thus the omission of a second certificate, even if we assume a second one was technically required, was an immaterial omission.

## The Second Challenge

The plaintiff's appeal from the commission's second decision raises an issue of somewhat greater merit. Because of

the time limitations for placing a referendum question on the ballot, the petition blanks on which additional signatures were to be placed had to be prepared and circulated before the commission could act on the plaintiff's challenge to the absence of ten qualified voters' signatures on the second petition.  We now know from the commission's first decision, which the petition's proponents do not challenge, that three of the first ten names on the second petition were names of persons who were disqualified.  These names were nevertheless printed on the petition blanks distributed for subsequent signatures.  The plaintiff argues that the presence on those forms of the names and addresses of three persons who did not qualify invalidates the referendum petition and that, therefore, the question should not appear on the ballot.

We observe first that there was no deception constituting fraud or misrepresentation.  The three individuals all were in favor of the referendum petition.  This is not a case in which the name of some supposedly influential person was included among the first ten signers in order to attract support.  Also, each form distributed contained a description of the Bottle Bill so that the substantive merits of having a referendum on the Bottle Bill were available for each potential signer to consider.

The plaintiff's argument relies on the assumption that there was a procedural error in printing the names of the "first ten signers" because three of them did not qualify as "qualified voters."  The constitutional provision concerning the distribution of petitions may be read so as to provide that there was no error in the proceedings.  Section 4 of Part III, art. 48, The Referendum, requires that a petition of the character involved here should be signed by "ten qualified voters" but that the blanks to be used for subsequent signers should set forth at the top "the names and residences of the first ten signers."  The Constitution does not require that the names of the first "ten qualified voters" signing a referendum petition should be printed, only the names of the first ten signers.  The difference may have significance.

We do not decide whether the second petition was valid on the ground that only the names and addresses of the first ten signers must appear on the printed form rather than the first ten qualified voters. The issue is complicated because the proponents agree that one person listed among the first ten did not sign the second petition and the commission found, on disputed evidence, that another person listed in the first ten had not signed the petition. A third person who signed the petition was improperly registered. The printed forms, thus, did not have the names of the first ten persons who signed the petition, only the names of the first ten purported signers. We shall assume, without deciding, that the inclusion on the printed forms of the names of two persons who did not sign the second petition was contrary to the constitutional requirements.

Although only 29,434 additional signatures were required to place the question on the ballot, 70,715 additional signatures were in fact obtained.[4] Although a constitutional error in the process may not be corrected by obtaining a large number of signatures in excess of what is required, we should measure the magnitude of any error "by an analysis of the extent to which it was likely to have influenced voters." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 236 (1981). Cf. *Tiberio* v. *Methuen,* 364 Mass. 578, 583 (1974) (procedural errors in distributing report of charter commission not shown to have "materially and substantially affected" [G. L. c. 43B, § 14 (3)] a vote adopting a home rule charter).

The persons who signed the petition were not misled by the indication of support of the three persons who were not among the "ten qualified voters." These three persons did

---

[4] Article 48, The Referendum, III, § 4, as amended, requires the filing of "a number of signatures of qualified voters equal in number to not less than one and one half percent of the entire vote cast for governor at the preceding . . . state election." The record does not indicate whether any of these signatures did not qualify because not more than one fourth of the certified signatures may come from one county. See art. 48, General Provisions, II. See *Opinions of the Justices,* 326 Mass. 781, 790-791 (1950).

support the petition. The question more appropriately is whether the subsequent signers would have acted differently if the three disqualified names had not appeared and only the names of the "ten qualified voters" had appeared. There was no proof that the change would have produced a significantly less positive response to the referendum petition, and we see no reasonable basis for drawing such an inference. The burden of proof is appropriately on the plaintiff. See *McCarthy* v. *Secretary of the Commonwealth,* 371 Mass. 667, 684-685 (1977). We know that the Bottle Bill has received considerable attention in recent years and that strong feelings have been expressed on each side of the issue. The petition blanks stated the question proposed to be presented to the voters. There is no reasonable basis for concluding that the improper inclusion of three names out of ten on the petition forms materially affected either the number of signatures obtained or the attitude of the persons who signed those forms. Nor do we accept the argument that any constitutional error in the procedure must be treated as infecting the entire second petition. See *Hebert* v. *State Ballot Law Comm'n,* 10 Mass. App. Ct. 275, 278-279 (1980).