LORETTA A. CAPEZZUTO vs. STATE BALLOT LAW
COMMISSION
(and a companion case[1]).

Suffolk. May 10, 1990. - July 11, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Initiative. *Elections*, Validity of petition.

An initiative petition lacked proper subscription by ten qualified voters, as
required by the Amendments to the Massachusetts Constitution, art.
48, The Initiative, II, § 3, and thus was improperly certified by the
Attorney General, where only the drafter and eight of the other voters
whose signatures were submitted could be deemed to have had before
them the full text of the proposed law for examination and considera-
tion. [951-957]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 17, 1989.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on March 5, 1990.

The cases were consolidated for trial in the Supreme Judi-
cial Court for the county of Suffolk and were reported by
*Nolan*, J., on a statement of agreed facts.

*Gerald J. Caruso* (*Robert P. Rodophele* with him) for
Loretta A. Capezzuto & another.

*Eric J. Mogilnicki*, Assistant Attorney General, for the
Attorney General & another.

*Charles C. Caldart & Kenneth L. Kimmell*, for the inter-
veners, submitted a brief.

---

[1]Massachusetts Committee for Responsible Waste Management &
another *vs.* Attorney General & another. Amy Perry and eighteen other
individuals were allowed to intervene.

GREANEY, J. At issue in this case is the validity of an initiative petition which proposed enactment of a law entitled "An Act to promote environmentally acceptable product packaging." If enacted, the proposed law would require all packaging used in Massachusetts after December 31, 1995, to be reusable or to contain recyclable or recycled materials which meet certain specific standards. The proposed law also provides various remedies to redress violations.

On August 2, 1989, the drafter of the proposed law, Amy Perry, caused to be submitted an initiative petition to the Attorney General for certification pursuant to the procedure prescribed by the Amendments to the Massachusetts Constitution, art. 48, The Initiative, II, § 3. The submitted document purportedly had been signed by nineteen registered voters, nine more than the constitutionally required ten signers. See *id.* The Attorney General subsequently certified that the petition was in proper form and appropriate for submission to the voters. This certification reflects the Attorney General's determination that, among other things, the petition had been validly signed "by ten qualified voters of the commonwealth," and "that it contains only subjects not excluded from the popular initiative." *Id.*

On August 31, 1989, prior to the Attorney General's decision to certify the initiative petition, the plaintiff Loretta Capezzuto filed an objection with the State Ballot Law Commission (commission) to test the legality of the purported signatures. The objection, as amended, alleged that: (1) the petition had not been "signed by ten qualified voters of the commonwealth," as required by art. 48, The Initiative, II, § 3, because the signatures were not physically located on the petition itself, and because (2) the signers did not subscribe to a document which "set forth the full text" of the law as required by § 1 of the same article,[2] and that, (3) even if constitutional requirements had been complied with, the peti-

_____

[2]The reference in art. 48, The Initiative, II, § 3, to "[s]uch petition" refers to a petition as defined in § 1. Accordingly, a petition submitted to the Attorney General pursuant to § 3 must comply with the § 1 mandate that it "set forth the full text" of the proposed law.

tion still failed the statutory requirement that the signatures be made "in person." See G. L. c. 53, § 7 (1988 ed.), and G. L. c. 53, § 22A (1988 ed.) (laws relating to signatures on candidates' nomination papers shall apply, "so far as apt," to the signing of initiative and referendum petitions). After a hearing, the commission issued a decision in which it made findings of fact (to which we shall return below), and overruled Capezzuto's objection. Capezzuto appealed from this decision to the Superior Court pursuant to G. L. c. 55B, § 4 (1988 ed.), and G. L. c. 30A, § 14 (1988 ed.), seeking to set aside the commission's decision and a declaration (pursuant to G. L. c. 231A) that the petition had been improperly certified.

On March 5, 1990, the plaintiff Massachusetts Committee for Responsible Waste Management, together with Capezzuto, filed another action in the Supreme Judicial Court for Suffolk county, challenging the Attorney General's certification of the initiative petition. As the primary basis for this action, the plaintiffs alleged that the proposed law, in so far as it creates various remedies for violations of the proposed law, relates to the powers of the courts, and thus involves a matter which is expressly excluded from the initiative process. See Art. 48, The Initiative, II, § 2.[3]

On April 3, 1990, the parties filed with a single justice of this court a statement of agreed facts, along with joint motions seeking (a) to transfer Capezzuto's appeal of the commission's decision from the Superior Court to this court pursuant to the authority conferred by G. L. c. 211, § 4A (1988 ed.); (b) to consolidate that case with the case pending in the county court challenging the Attorney General's certification; (c) to permit Amy Perry and eighteen other individuals to intervene; and (d) to reserve and report the entire matter to the full court. The single justice granted all the motions and we have the issues in both cases before us. We conclude that the petition lacks the required ten signatures.

---

[3]The complaint in this action also incorporated the other arguments that had been raised by Capezzuto before the commission.

Our analysis properly begins with a review of the commission's decision. As the defendants correctly point out, the commission's findings of fact will be upheld if supported by "substantial evidence," see *Almeida Bus Lines, Inc.* v. *Department of Pub. Utils.*, 348 Mass. 331, 341 (1965), which is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." See G. L. c. 30A, § 1 (6) (1988 ed.); *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. 570, 574 (1974); *Labor Relations Comm'n* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). However, the conclusions of law to be drawn from those facts are subject to independent judicial review. See *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. 466, 476 (1985); *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). This principle is of particular importance when the legal issue involved is of constitutional dimension. See *Selectmen of Framingham* v. *Civil Serv. Comm'n*, 366 Mass. 547, 554 (1974).

Applying these principles, we find in the evidence and materials before the commission support for its factual findings. However, we conclude that the commission erred as matter of constitutional law when it ruled, based on those facts, that "twelve signers subscribed to the full text of the petition before it was filed with the Attorney General."[4] Because we conclude that the *full text* of the proposed law was not subscribed to by ten qualified voters, as required by our Constitution, we need not address the additional arguments raised by the plaintiffs.

The relevant facts, drawn from the commission's findings and the parties' stipulations, are as follows. Amy Perry, the principal drafter of the proposed law, prepared three separate drafts of the initiative petition. She produced the first one on July 28, 1989, and circulated copies to each of the

---

[4]Because it deemed twelve signatures to be valid, thereby satisfying the constitutional requirement of ten valid signatures, the commission did not address the validity of the remaining seven signatures which appeared on the petition, and, accordingly, those signatures are not involved in this case.

eighteen other people who ultimately signed. Along with the copies, Perry circulated a cover letter which requested comments and criticisms.

In response to the comments she received, Perry prepared a second draft, which she printed at around noon on August 2, 1989. The commission found that this draft was "substantially different from the July 28 draft and incorporated many of the changes suggested by people who reviewed the July 28 draft." Perry sent copies of the second draft by facsimile machine to eight of the signers (Roosevelt, Alexander, Pines, Alt, Wood, Domenitz, Barrett, and Kratka).[5] Thus, including Perry herself, nine people received actual copies of the substantially altered second draft.

Also on August 2, Perry spoke by telephone to another of the signers, Amy Goldsmith. Perry orally described to Goldsmith the substantive changes that had been incorporated into the new August 2 draft. Perry offered to read those changes verbatim to Goldsmith, but Goldsmith declined, stating that she was accepting the changes as they had been described to her by Perry. Perry spoke in person to another signer, Ellen Citron, that same day. The two women discussed the August 2 draft, and Citron stated that she understood the changes that had been made and felt comfortable with them.

At approximately 3 P.M. on August 2, Perry produced a third draft of the initiative petition. The commission found that this draft was "almost identical" to the second draft, "except for some minor typographical and grammatical corrections." The commission further found that "[n]o substantive changes" had been incorporated into the third draft. No one except Perry saw the third draft, nor did Perry discuss it with any of the signers. Perry caused to be submitted the third draft, together with signature pages which she had received from each of the eighteen other signatories, to the At-

---

[5]Roosevelt, Alexander, and Pines are members of the Legislature. Alt, Wood, Domenitz, Barrett, and Kratka all were employees of the Massachusetts Public Interest Research Group (MASSPIRG) who worked in the same office as Perry.

torney General's office in time to meet the 5 P.M. filing dead-
line that same day, August 2.

In summary then, the facts pertaining to the three drafts
are as follows:

(1) The first draft was seen by all nineteen signatories.

(2) The second draft was seen by nine signatories, and
orally described to two signatories. The second draft differed
greatly in substance from the first draft.

(3) The third draft was seen by Perry alone. It did not
differ in substance from the second draft.

(4) With respect to these previous drafts, eighteen people
sent signature pages to Perry, and each person subsequently
reaffirmed the validity of his or her signature.

The dispositive question, as we see it, is whether ten people
can be deemed to have signed on to a draft which set forth
"the full text" of the proposed law. In answering that ques-
tion, we will assume, without deciding, that the second draft
of the petition set forth the full text of the proposed law be-
cause that draft was, in the commission's view, identical in
substance to the draft ultimately forwarded to, and approved
by, the Attorney General.[6]

Based on the assumptions noted, we conclude that there
are nine people who signed on to the second draft. This
group includes Perry, who drafted the petition, and the eight
people who had before them the entire text of the second
draft for examination and consideration.

This, however, still leaves the proponents of the petition
one signature short of the constitutionally mandated ten. In
order to comply with the Constitution, it would be necessary

---

[6]This assumes (without deciding) that it is permissible to make typo-
graphical and grammatical changes in the text of the petition that do not
alter its substance. This also assumes, without deciding, that subscription
by the use of attached signature pages signed by the voters outside the
presence of the drafter of the petition was proper, and that there are no
other flaws in the initiative process in this case.

to conclude that either Goldsmith or Citron (or both) can be deemed to have validly signed on to the second draft.[7]

If it is to have any meaning at all, the constitutional requirement that ten people must sign a petition which sets forth the full text of a proposed law must require, at a minimum, that each signer actually see the applicable text, which in this case is the text of the second draft. The problem here is that the only version that Goldsmith and Citron actually *saw* was the July 28 version, which undisputedly does not contain the full text of the proposed law. Goldsmith's and Citron's knowledge of the contents of the second draft (August 2, noon draft) is based exclusively on an oral description of it furnished to them by Perry.

The fact that Goldsmith and Citron did not actually see the full text is, in our view, a significant problem, not merely, as the commission characterized the situation, "a technical error in signing the initiative petition." A signature requirement would be meaningless if the person supplying the signature has not first seen what it is that he or she is signing. Further, and more importantly, loose interpretation of the subscription requirement can pose a significant potential for fraud. A person permitted to describe orally the contents of an initiative petition to a potential signer, without the signer having actually examined the petition, could easily mislead the signer by, for example, omitting, downplaying, or even flatly misrepresenting, portions of the petition that might not be to the signer's liking. This danger seems particularly acute when, in this case, the person giving the description is the drafter of the petition, who obviously has a vested interest in seeing that it gets the requisite signatures to qualify for the

---

[7]The commission found a twelfth signature to be valid, that of Armando Carbonell. Perry spoke with an associate of Carbonell (a Ms. Daly) by telephone on August 2 and explained the changes in the second draft that responded to Carbonell's concerns. Daly communicated this information to Carbonell. Daly then called Perry and told her that Carbonell was satisfied with the petition. Because his knowledge of the substantive changes made in the second draft was even more attenuated than that of either Goldsmith or Citron, we have excluded Carbonell as a possibility for the tenth signature.

ballot. Additionally, the proposed law in this case is a highly detailed, nine-page document. As is the case with all laws, the precise language chosen would be of great significance. Given these facts, it seems unlikely that an oral description of the proposed law's substance could possibly convey anywhere near the same amount of information, or in as accurate a manner, as would firsthand review of the proposed law's text by the signer.

Despite the potential for fraud inherent in the practices which occurred here, the commission found that there was no indication of any actual fraud or deception having occurred. While this finding is supported by the record, and no one alleges any misconduct on Perry's part, the constitutional requirement that ten people sign the "full text" of a proposed law is not confined to situations where fraud is apparent. A post hoc determination that no fraud has occurred cannot serve as a justification for disregarding explicit constitutional text. The ten-signature requirement is far from onerous, and is supported by sound public policy reasons. We are not inclined to dilute the constitutional language so far as to suggest that the ten signers need not even see what it is that they are being asked to sign.[8]

The Attorney General relies on *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 235-236 (1981), and *Gibbons* v. *State Ballot Law Comm'n*, 387 Mass. 343, 349 (1982), in support of the proposition that "exceedingly technical" arguments should not be permitted to block access to the ballot. While that principle is certainly valid, it is not on point, because, as we have discussed above, we do not perceive the constitutional infirmity here to be a

---

[8]After an initiative petition has been certified by the Attorney General and submitted for signatures from the general public, not even nonsubstantive changes may be made without the signatures of a majority of the ten original signers, and a certification from the Attorney General that the amendment is "perfecting in its nature and does not materially change the substance of the measure." Art. 48, The Initiative, V, § 2. See Stewart, The Law of Initiative Referendum in Massachusetts, 12 New England L. Rev. 455, 486 (1977).

mere technicality. This conclusion is reinforced by a comparison of the instant facts to the alleged errors in the *Massachusetts Teachers* and *Gibbons* cases, which were of a much less serious nature than the error here. In *Massachusetts Teachers*, the summary of Proposition 2½ which appeared on the ballot incorrectly described the initiative as applied to twenty-six of the Commonwealth's 351 cities and towns. In *Gibbons*, the printed referendum petition forms circulated to obtain the requisite number of signatures to qualify for the ballot incorrectly included in the list of the ten original signers the names of three individuals whose signatures had been invalidated. In both cases, however, the persons signing or voting on the petition had before them a written summary prepared by a neutral government official. By comparison, in this case, Citron and Goldsmith had only oral summaries made by a partisan advocate of the petition in question.

Our conclusion that the initiative petition lacks proper subscription by at least ten qualified voters renders it unnecessary to consider the remaining issues raised by the parties pertaining to whether the petition was improperly certified by the Attorney General because it relates to the powers of the courts, a matter expressly excluded from the popular initiative by art. 48, The Initiative, II, § 2.

Inasmuch as the two cases have been consolidated in the county court, a single judgment is to be entered there referring to the consolidated cases which declares that the full text of the initiative petition in question was not subscribed to by ten qualified voters as required by art. 48, The Initiative, II, §§ 1 and 3, and, consequently, that the petition should not have been certified by the Attorney General or filed with the Secretary of the Commonwealth.

*So ordered.*