**Constance Sherbill HENRY, et al., Plaintiffs, Appellants,**

v.

**Michael J. CONNOLLY, etc., et al., Defendants, Appellees.**

No. 90–1699.

United States Court of Appeals, First Circuit.

Heard Aug. 3, 1990.

Decided Aug. 8, 1990.

Rehearing and Rehearing En Banc Denied Sept. 6, 1990.

Charles C. Caldart, Public Interest Litigation Project, and David J. Fine and Associates, Boston, Mass., were on brief, for plaintiffs, appellants.

Eric J. Mogilnicki, Asst. Atty. Gen., with whom James M. Shannon, Boston, Mass., Atty. Gen., was on brief, for Michael J. Connolly, defendant, appellee.

Gerald J. Caruso, with whom Robert P. Rodophele, Ann Ryan-Small, and Ferriter, Scobbo, Sikora, Caruso & Rodophele, P.C., Boston, Mass., were on brief, for intervenor defendants Loretta A. Capezzuto, et al., appellees.

Before SELYA and CYR, Circuit Judges, and RE,[*] Judge.

SELYA, Circuit Judge.

The Massachusetts Supreme Judicial Court (SJC) recently ruled that Initiative Petition No. 89–39 (the "Recycling Initiative") was not subscribed to by 10 qualified voters as required by the Massachusetts Constitution[1], and therefore should not be placed on the ballot at the forthcoming November 1990 general election. *See Capezzuto v. State Ballot Law Comm'n*, 407 Mass. 949, 556 N.E.2d 366 (1990). After the Secretary of State indicated that he would comply with the SJC's directive, plaintiffs, signers and supporters of the Recycling Initiative, sought injunctive relief in federal district court. Mindful of the temporal exigencies, the district court placed the case on a fast track and, after compiling a record satisfactory to the parties, refused the injunction and dismissed the plaintiffs' complaint. *Henry v. Connolly*, 743 F.Supp. 922 (D.Mass.1990). This appeal followed.

We, too, expedited the proceedings. Having heard oral argument on August 3, 1990, digested the litigants' briefs, scrutinized the record, and considered the parties' contentions in light of applicable law, we affirm the judgment below.

David J. Fine, Boston, Mass., with whom Kenneth L. Kimmell, Watertown, Mass.,

---

[*] The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

1. As amended, Article 48 of the state constitution provides that, to originate a popular initiative, the "petition shall first be signed by ten qualified voters of the commonwealth and shall then be submitted to the attorney-general...."

## I

Despite the salience of the subject matter, we need not linger long over the appeal. The SJC's opinion rested, in the main, on its determination that the state constitutional requirement, quoted *supra* note 1, meant that the signers, at or before the time they subscribed their names to the petition, must have had "before them" a copy of the full text of the actual petition.[2] 407 Mass. at 954, 556 N.E.2d 366. As a matter of Massachusetts law, that determination is not open to question. *See, e.g., Commissioner v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (a "State's highest court is the best authority on its own law"); *Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 115–16 (1st Cir. 1988) (federal court of appeals is "bound ... by the actual expression of the state's highest court" on a point of state law), *cert. denied,* — U.S. ——, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir.1984) (state court decisions resting on adequate and independent state grounds "must be honored"), *cert. denied,* 469 U.S. 1229, 105 S.Ct. 1230, 84 L.Ed.2d 367 (1985). As a matter of comity, the determination is equally unimpugnable; a federal court cannot presume to sit in direct appellate review of final state court determinations in judicial proceedings. *See, e.g., District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Lancellotti v. Fay*, 909 F.2d 15, 17 (1st Cir.1990).

Appellants' federal case, then, depends on their argument that the physical custody requirement contravenes the federal Constitution, in particular, the Due Process Clause or the Equal Protection Clause.[3] The district court addressed these assertions squarely and in detail, *see* 743 F.Supp. at 928–29 (finding no due process violation); *id.* at 931 (finding no equal protection violation), and no useful purpose would be served by attempting today to reinvent the constitutional wheel. We believe that the district court's reasoning on these points is compelling and we adopt it.

## II

Our task is not yet completed, for appellants also assign error to various factual findings and supposed evidentiary bevues, which, they say, marred the proceedings below.

Appellants' attempt to vault the district judge's resolution of the facts runs up against too high a hurdle. Under the Civil Rules, we review the trial court's factfinding only for clear error. *See* Fed.R.Civ.P. 52(a). Thus, we "cannot undertake to decide factual issues afresh." *Reliance Steel Prod. Co. v. National Fire Ins. Co.*, 880 F.2d 575, 576 (1st Cir.1989). Put another way, "[f]idelity to Rule 52(a) means that deference must be paid to the findings below...." *Jackson v. Harvard Univ.*, 900 F.2d 464, 466 (1st Cir.1990), *petition for cert. filed* July 9, 1990 (No. 90–74). In the final analysis, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The clear-error standard has a long reach in a case like this one: it governs findings

---

**2.** The district court aptly termed this a "physical custody" requirement. *Henry v. Connolly*, 743 F.Supp. at 927. We borrow the nomenclature. It is crystal clear that the requirement was not met. In this instance, no more than nine signers had the full text "before them."

**3.** Appellants also raised a First Amendment challenge in the district court. Except for a passing reference to the First Amendment in

connection with their equal protection argument, they do not renew this asseveration in their appellate brief. Therefore, we deem the challenge abandoned. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (issues adverted to on appeal, without any attempt at developed argumentation, are waived), *cert. denied,* — U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

of fact (1) anent the significance of documentary evidence, *see id.* at 573–76, 105 S.Ct. at 1511–12, and (2) about a particular actor's state of mind or subjective intent, *see Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1019 (1st Cir.1988). Moreover, the same standard applies to the trial court's resolution of mixed questions of law and fact. *See, e.g., RCI Northeast Servs. Div. v. Boston Edison Co.,* 822 F.2d 199, 202 (1st Cir.1987); *Fortin v. Commissioner of Mass. Dept. of Public Welfare,* 692 F.2d 790, 794 (1st Cir.1982).

■ Visualizing the record through the prism of Rule 52(a) leaves no doubt as to the result we must reach. While the district court may not have been compelled to find, for example, that Perry's ostensible reliance on the supposedly "misleading" advice she received from the Secretary of State was unreasonable, the district court, on this chiaroscuro record, certainly had the right to draw such an inference. The written material produced and disseminated by the Commonwealth, while perhaps not conspicuously enlightening, was not affirmatively deceptive. In the same vein, the remarks attributed to a state official, Sullivan, emerged so late in the day as to cast grave doubt on the credibility of the account set forth in Trial Exhibit 2, Perry's supplemental affidavit.[4] At any rate, the Sullivan comment, even if taken at face value, was easily subject to an innocuous interpretation.

In assessing detrimental reliance *vel non,* the test is one of objective reasonableness under the circumstances; and it is surpassingly difficult, on this record, to disturb the district court's essentially discretionary finding that the test was not satisfied. *Cf., e.g., Rivera–Gomez v. de Castro,* 900 F.2d 1, 3 (1st Cir.1990) (judge's finding of no detrimental reliance sustainable where judge "had the option of choosing between opposing inferences"); *Clauson v. Smith,* 823 F.2d 660, 663 (1st Cir. 1987) (similar). Contrary to the implication

of their argument, appellants were not entitled to have the court below draw every conceivable inference in their favor or to be relieved of the duty to act prudently in their effort to put the Recycling Initiative on the ballot.

The caselaw which appellants cite offers them little solace. Apart from other important distinctions (such as the nature of the affected right), those cases without exception involved instances where the government, by an established policy or course of conduct, actively misled interested parties. *See, e.g., Griffin v. Burns,* 570 F.2d 1065, 1074 (1st Cir.1978) (state "could not, constitutionally, invalidate ... ballots that state officials had [prepared], where the effect of the state's action had been to induce the voters to vote by this means"); *Briscoe v. Kusper,* 435 F.2d 1046, 1055 (7th Cir.1970) (Board of Election Commissioners could not apply "new ... rule to nullify previously acceptable signatures without prior notice"); *Williams v. Sclafani,* 444 F.Supp. 906, 912 (government's erroneous advice established "custom or practice, which induced justifiable reliance" on later occasions), *aff'd mem.,* 580 F.2d 1046 (2d Cir. 1978). Here, there was no clearly established practice, no contravening of a previously announced rule, no "sharp break from prior policy," *see Gibson,* 741 F.2d at 1272. Under the facts as supportably found by the district court, the Commonwealth, in the absence of suitably focused inquiry, was merely uninformative. The element of active inducement, present in *Griffin, Briscoe,* and *Williams,* is lacking in this situation. Hence, reliance becomes measurably harder to justify and the district court's disposition of the disputed point becomes impervious to clear-error attack.

No useful purpose would be served by exposition for exposition's sake. Without lengthy enumeration, we can state, broadly, that appellants' other "factfinding" objections are cast in a similar mold, and meritless. By the same token, the lower

---

4. We express no opinion on the district court's ruling that, in any event, Perry's supplemental affidavit was probably inadmissible. *See* 743 F.Supp. at 930. Even if the affidavit is considered, the district court made clear that its finding of fact would not waver. *See id.* at 930. It is this finding which we deem supportable.

court did not commit reversible error in any evidentiary ruling.

### III

In constitutional terms, states may foreclose initiative petitions entirely. Having chosen to allow them, however, Massachusetts must structure the grant, and administer ballot access, in a manner comporting with the demands of the federal Constitution. Nevertheless, it is important to remember that the federal nose cannot be poked into the state's tent unless some constitutional infirmity exists. So long as the constitutional minimum is met, our task ends. It is not for a federal court to say that a constitutionally adequate procedural arrangement, duly adopted by the Commonwealth, is worse, or less fair, than some alternative formulation.

Here, assuming without deciding that maintenance of this action was not barred by res judicata, lack of standing, or one of the other affirmative defenses urged by appellees (defendants and intervenors), the plaintiffs cannot prevail on the merits of their appeal, for the Commonwealth has not strayed onto constitutionally forbidden terrain. The state constitution has set the ground rules under which initiative petitions may be advanced. The SJC has construed those ground rules in a plausible (if not inevitable) way. The result may be ungenerous, but it is not arbitrary to the point of unconstitutionality. In a state the size of Massachusetts, requiring, as an initial precondition to ballot access, that 10 qualified voters endorse the proposed petition, having "before them" its actual text, constitutes a rather modest threshold. Given the state's overarching interest in the integrity of the ballot, the requirement scarcely seems unduly onerous or impermissibly burdensome.

Nor do we believe it can be said that plaintiffs were taken unfairly by surprise. They knew that weighty matters were at stake. They knew, or should have known, that the 10–voter precondition was of constitutional dimension and, due to the significance of state-wide referenda and the practical limitations on ballot space, would like-

ly be construed meticulously by the SJC. Notwithstanding these red flags, the plaintiffs approached the attendant formalities hastily and without sufficient circumspection. Given the lower court's sustainable factfinding, the plaintiffs cannot reasonably claim to have been misled either by state officials or by an embedded state-created practice. Having failed to look before they leaped, plaintiffs must now suffer the predictable consequences.

Let us be perfectly clear. We fully understand the critical nature of environmental issues and we appreciate the laudable goals which underlie the Recycling Initiative. But, the civilized world learned long ago that ends cannot justify means. Regulations and procedures are the strands that harness our society to the rule of law. Where, as here, a state's reasonable procedures are flouted, albeit through inadvertence rather than obduracy or malice, a federal court cannot override the ensuing default simply because the result may seem unfortunate.

*The order of the district court dismissing the complaint is affirmed.*