413 Mass. 25                                                25

Citizens for a Competitive Massachusetts *v.* Secretary of the Commonwealth.

CITIZENS FOR A COMPETITIVE MASSACHUSETTS & others[1]
*vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk. June 12, 1992. - July 6, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Constitutional Law*, Initiative petition. *Initiative*.

A report to the General Court by a legislative committee with respect to an initiative petition, as required by art. 48, The Initiative, III, § 1, of the Amendments to the Constitution of the Commonwealth, is not a prerequisite to the placing of the petition on the ballot by the Secretary of the Commonwealth. [30-32]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 19, 1992.

The case was reported by *O'Connor*, J.

The case was submitted on briefs.

*Margaret H. Marshall, Edward F. Hines, Jr., Sarah Chapin Columbia & Kathleen A. Curran* for the plaintiffs.

*Scott Harshbarger*, Attorney General, & *Peter Sacks*, Assistant Attorney General, for the defendant.

*Paul Peter Nicolai & Brian D. Harrington*, for Citizens for Limited Taxation, amicus curiae.

*Cheryl M. Cronin, Alice Daniel & David A. Nicholas*, for Tax Equity Alliance for Massachusetts Inc., & others, amici curiae.

GREANEY, J. The plaintiffs commenced this action in the county court seeking a declaration that an initiative petition entitled "An Act to require public reporting of corporate tax information and analysis of certain tax expenditures" is in violation of art. 48 of the Amendments to the Massachusetts Constitution and, therefore, should not be allowed to appear

---

[1]Ten registered voters of the Commonwealth.

on the November, 1992, Statewide ballot. A single justice of this court reserved and reported the action to the full court based on the parties' pleadings and the statement of agreed facts. We hold that the initiative petition complies with the requirements of art. 48.[2]

The petition proposes to amend G. L. c. 62C (1990 ed.), by adding a new section, § 12A, which would require certain banks, insurance companies, and publicly-traded corporations to file annual reports with the Secretary of the Commonwealth listing information from their State tax returns, including profit, income, corporate income tax due, deductions, exemptions, and credits. The Secretary would be required to make the reports public. The petition also proposes to amend G. L. c. 29, § 5B (1990 ed.),[3] to require State officials to release a detailed analysis of certain tax expenditures,[4] including information on actual revenue loss and the number and proportion of taxpayers benefiting from the tax expenditure.

The parties agreed that, pursuant to the procedure prescribed by art. 48, the petition, signed by ten voters of the Commonwealth, was filed on or before August 7, 1991, with the Attorney General. The Attorney General certified to the Secretary of the Commonwealth that the proposed law contained no matters excluded from the initiative process and

---

[2] We acknowledge the briefs submitted by Citizens for Limited Taxation and Tax Equity Alliance for Massachusetts, Inc., as amici curiae in support of the Secretary's position.

[3] The original text of the initiative petition sought to amend "[s]ubsection (b) of section five of Chapter 29 of the General Laws . . . ." On May 18, 1992, pursuant to art. 48, The Initiative, V, § 2, as amended by art. 81, § 3, of the Amendments to the Constitution, one of the ten original signers of the petition requested the Attorney General to certify that a proposed amendment to the petition, changing the language to "[s]ection 5B of Chapter 29 of the General Laws," was perfecting in its nature and did not materially change the substance of the proposed law. As of May 22, 1992, the Attorney General had not acted upon the request.

[4] "Tax expenditures" are defined in G. L. c. 29, § 1 (1990 ed.), as "state tax revenue foregone as a direct result of the provisions of any general or special law which allows exemptions, exclusions, deductions from, or credits against, the taxes imposed on income, corporations, and sales."

413 Mass. 25                                                          27

Citizens for a Competitive Massachusetts v. Secretary of the Commonwealth.

that the proposed law was in proper form for submission to
the people. Art. 48, The Initiative, II, § 3. On December 4,
1991, the proponents of the petition submitted sufficient sig-
natures to the Secretary to require the transmission of the
petition to the Legislature. Art. 48, The Initiative, II, § 4.
The Senate and the House of Representatives referred the
petition to the joint committee on taxation, which on March
31, 1992, held a public hearing on the petition at which par-
ties in interest were heard. Art. 48, The Initiative, III, § 1.
On April 29, 1992, the joint committee on taxation met in
executive session and voted not to report on the petition to
the Legislature at that time. As of May 6, 1992, the first
Wednesday in May and the last day for the Legislature to
vote on the enactment of the proposed law,[5] the joint com-
mittee on taxation had not reported on the petition to the
General Court.

On May 19, 1992, the plaintiffs filed a complaint in the
Supreme Judicial Court for the county of Suffolk seeking a
declaration under G. L. c. 231A (1990 ed.) that, because of
the failure of the legislative committee to report on the peti-
tion to the General Court as required by art. 48, The Initia-
tive, III, § 1, the petition may not be submitted to the people.
The plaintiffs also sought an order prohibiting the Secretary
of the Commonwealth from allowing the petition to appear
on the November, 1992, Statewide ballot. The Secretary an-
swered that under art. 48, the legislative committee's report

---

[5]Article 48, The Initiative, V, § 1, as amended by art. 81, § 2, of the
Amendments, provides that, "[i]f the general court fails to enact such law
before the first Wednesday of May, and if such petition is completed by
filing with the secretary of the commonwealth [sufficient additional signa-
tures], then the secretary of the commonwealth shall submit such proposed
law to the people at the next state election." After the first Wednesday in
May, the Legislature may not vote on an initiative petition; at that time
"the constitutional provisions fixing the procedure for submission to the
people . . . become operative." Opinion of the Justices, 318 Mass. 793,
796-797 (1945). See Opinion of the Justices, 370 Mass. 869, 875 & n.3
(1976).

to the General Court is not a prerequisite for an initiative petition to be submitted to the people.[6]

Article 48, The Initiative, III, § 1, provides: "If a measure is introduced into the general court by initiative petition, it shall be referred to a committee thereof, and the petitioners and all parties in interest shall be heard, and the measure shall be considered and reported upon to the general court with the committee's recommendations, and the reasons therefor, in writing. Majority and minority reports shall be signed by the members of said committee." The plain language of this section of art. 48, the plaintiffs argue, requires the legislative committee to report on the petition, and the result of the committee's failure to report must be that the petition may not be placed on the ballot.

The plaintiffs seek to support their argument by drawing on the history of the Constitutional Convention of 1917-1918,[7] at which the procedure for the adoption of a law through a popular initiative, art. 48, was proposed. The plaintiffs contend that the delegates to that convention intended that the voters should have the benefit of legislative consideration and public debate concerning any initiative petition. To this end, the delegates added provisions to the initial resolution that a legislative committee consider and report on each initiative petition and that the committee report be included in the materials sent by the Secretary to each eligible voter, see art. 48, General Provisions, IV.[8] In the

---

[6]In his answer, the Secretary also challenged the standing of the organizational plaintiff, Citizens for a Competitive Massachusetts. We need not decide that issue because the individual plaintiffs have standing. *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue*, 401 Mass. 310, 313-314 (1987).

[7]See 2 Debates in the Constitutional Convention 1917-1918 (1918).

[8]Article 48, General Provisions, IV, requires the Secretary of the Commonwealth to send to each eligible voter information concerning the petition, including "a copy of the legislative committee's majority and minority reports, if there be such." The plaintiffs argue that the phrase "if there be such" does not render the legislative committee report optional. Rather, they contend, the phrase refers to the fact that the referendum and legislative amendment provisions of art. 48, unlike the initiative provision, do not

plaintiffs' view, these amendments to the original proposal were designed to ensure that the people would not be called on to vote as legislators without the information to which the delegates had determined they were entitled. Therefore, the plaintiffs suggest, to allow a petition to be presented to the people in the absence of a committee report would be contrary to the intent of the drafters of art. 48.

The plaintiffs also refer to cases in which this court has held that the failure to satisfy other provisions of art. 48 containing similar mandatory language has been fatal to an initiative petition. In *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 325-326 (1951), we held that, where the summary of the proposed measure to be printed on blanks for the use of subsequent signers of the petition and to be printed on the ballot was not "fair," as required by art. 48, The Initiative, II, § 3,[9] a law purportedly adopted under the initiative was nevertheless invalid. In *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth*, 375 Mass. 85, 90-91 (1978), we upheld the Secretary's determination that, where the signatures on a petition were collected in violation of the county-distribution rule, art. 48, General Provisions, II,[10] the petition could not be submitted to the General Court. In *Capezzuto* v. *State Ballot Law Comm'n*, 407 Mass. 949, 957 (1990), we ruled that an initiative petition was improperly certified by the Attorney General where the full text of the petition was not subscribed to by ten qualified voters as required by art. 48, The Initiative, II, §§ 1 and 3.[11] Similarly in this case, the plaintiffs contend, the violation of

provide for legislative committee reports. Our decision in this case does not require us to resolve this point.

[9] Article 48, The Initiative, II, § 3, provides: "The secretary of the commonwealth shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a fair, concise summary, as determined by the attorney-general, of the proposed measure . . . ."

[10] Article 48, General Provisions, II, states: "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county."

[11] Article 48, The Initiative, II, § 1, provides: "An initiative petition shall set forth the full text of the constitutional amendment or law . . . which is

mandatory language in art. 48 — here, the requirement that the measure "shall be considered and reported upon to the general court with the committee's recommendations, and the reasons therefor, in writing" — renders the petition constitutionally defective, and it may not be placed on the ballot.

Although it is true, as the plaintiffs argue, that the provisions of art. 48 are mandatory rather than directory, see *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 99 (1926), it is equally true that our interpretation of the amendment must be "the one most consonant with the general design and purpose of the Initiative." *Id.* at 97. See *Mount Washington* v. *Cook*, 288 Mass. 67, 70 (1934): "The aim of all interpretation is to give effect to the dominating idea of the instrument. Statements in the Constitution and its Amendments must be given effect in consonance with the end they are designed to accomplish."

We have previously stated that "art. 48 . . . created a people's process. It was intended to provide both a check on legislative action and a means of circumventing an unresponsive General Court. It presented to the people the direct opportunity to enact statutes regardless of legislative opposition. It projected a means by which the people could move forward on measures which they deemed necessary and desirable without the danger of their will being thwarted by legislative action." *Buckley* v. *Secretary of the Commonwealth,* 371 Mass. 195, 199 (1976). Our interpretations have been guided by the "firmly established principle that art. 48 is to be construed to support the people's prerogative to initiate and adopt laws." *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 403 Mass. 203, 211 (1988).

In light of these directives, we conclude that the legislative committee's failure to report on the petition, as required by art. 48, does not prohibit the Secretary from placing the petition on the ballot. The construction of the article proposed by the plaintiffs would contravene its fundamental purpose,

proposed by the petition." Section 3 states that "[s]uch petition shall first be signed by ten qualified voters of the commonwealth . . . ."

which is to permit the people to make law directly where the Legislature has failed or has refused to act. Notwithstanding the intent of the drafters of art. 48 to provide the voters with legislative consideration and public debate concerning proposed initiatives, "we refer to the [legislative history of art. 48] as one avenue only for construing the words of the amendment 'in such way as to carry into effect what seems to be the reasonable purpose of the people in adopting [it].' " *Buckley* v. *Secretary of the Commonwealth, supra* at 198, quoting *Raymer* v. *Tax Comm'r,* 239 Mass. 410, 412 (1921). We cannot endorse a result that would permit the Legislature, by failing or refusing to comply with a mandatory provision of art. 48, to frustrate the right of the people to place a proposed law on the ballot.[12] The cases cited by the plaintiffs in which this court required adherence to mandatory provisions of art. 48, see *Sears* v. *Treasurer & Receiver Gen., supra; Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth, supra;* and *Capezzuto* v. *State Ballot Law Comm'n, supra,* involved the failure of the proponents of the initiative measure or of the Attorney General to comply with those provisions. This case, by contrast, involves the failure of the Legislature to comply. Because the purpose of art. 48 is to allow the people "to enact laws directly without being thwarted by an unresponsive Legislature," *Opinion of the Justices,* 375 Mass. 795, 802 (1978), as was concluded in *Opinion of the Justices,* 318 Mass. 793 (1945), a different result is required.

*Opinion of the Justices,* 318 Mass. 793 (1945), considered what procedure should be applicable where the Legislature failed to comply with the requirement mandated by art. 48, The Initiative, V, § 1, that "a vote [on an initiative petition] shall be taken by yeas and nays in both houses before the first Wednesday of [May] upon the enactment of such law in

---

[12]The voters will not be entirely without guidance on the issues presented by the initiative petition. Under G. L. c. 54, § 54 (1990 ed.), the Secretary is required to send each eligible voter "arguments for and against every measure to be submitted to the voters of the commonwealth."

the form in which it stands in such petition." That opinion concluded in those circumstances that the Legislature had "fail[ed] to enact such law" as elsewhere provided in that section, and that "the constitutional provisions fixing the procedure for submission to the people of a law proposed by an initiative petition become operative." *Id.* at 797. Similarly in this case, the failure of a single legislative committee to report on an initiative petition by the deadline specified for the Legislature to take its roll call vote necessarily requires the same result.[13]

An appropriate judgment is to enter in the county court declaring that this petition is not in violation of the requirements of art. 48 in the respects raised by the plaintiffs.

*So ordered.*

---

[13]We note that in their statement of agreed facts, the parties indicated that four initiative petitions have previously reached the ballot without committee reports having been provided.