ALTHEA GARRISON *vs.* NELSON MERCED & another[1]

No. 92-P-1010.

Suffolk. July 29, 1992. - July 30, 1992.

Present: WARNER, C J., FINE, & PORADA, JJ.

*Elections*, Primary, Validity of petition.

Where one of the nomination papers submitted on behalf of a candidate in
a primary election for the office of State representative failed to iden-
tify the candidate's party affiliation, as required by G. L. c. 53, § 45,
this omission rendered the nomination paper invalid. [117-118] FINE,
J., dissenting.

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 29, 1992.

The case was heard by *Hiller B. Zobel*, J.

*William P. Lee* for State Ballot Law Commission.

*Burton A. Nadler* for Nelson Merced.

*Denise M. Leydon* for the plaintiff.

PORADA, J. At issue in this appeal is whether the failure of
a candidate for State representative in a State primary to
designate the political party (Democratic) whose nomination
he seeks on one of his nomination papers as required by
G. L. c. 53, § 45, is fatal to having his name printed on the
ballot at the primary election. The State Ballot Law Com-
mission (commission) ruled that, absent proof that the voters
who signed the nomination paper were misled, it was not fa-
tal. On appeal from the commission's decision, the judge in
the Superior Court held that the name of the political party
was necessary because G. L. c. 53, § 45, mandates: "Every
nomination paper [for a State primary] shall state in addi-

_____

[1]State Ballot Law Commission.

tion to the name of the candidate . . . the political party whose nomination he seeks." We affirm the judge's decision.

In order for the candidate's name to be placed on the ballot, the candidate needed to obtain the signatures of 150 Democratic or unenrolled voters. G. L. c. 53, §§ 44 & 46. The candidate's nomination papers contained 179 certified signatures. Pursuant to G. L. c. 55B, objections were lodged by Althea Garrison to one nomination paper containing twenty-seven certified signatures and eight signatures on other nomination papers. The parties stipulated to the removal of six signatures, leaving in dispute two signatures and the nomination paper containing twenty-seven signatures. It is the latter which is the subject of this appeal, for if it is struck, the candidate lacks the required number of signatures.

Although we recognize that exceedingly technical arguments should not block access to the ballot, see *Massachusetts Teachers Assn.* v. *Secretary of the Commonwealth*, 384 Mass. 209, 235-236 (1981), *Gibbons* v. *State Ballot Law Commn.*, 387 Mass. 343, 349 (1982), we do not perceive the omission of a party designation as a mere technicality. See *Capezzuto* v. *State Ballot Law Commn.*, 407 Mass. 949, 956-957 (1990). The plain language of § 45 provides: "Every nomination paper shall state in addition to the name of the candidate, (1) his residence, with street and number thereof, if any, (2) the office for which he is nominated, and (3) the political party whose nomination he seeks. This information, in addition to the district name or number, if any, shall be stated on the nomination papers before any signature of a purported registered voter is obtained and the *circulation of nomination papers without such information is prohibited*" (emphasis supplied). The inclusion of a candidate's party designation prevents any subscriber from being misled as to the candidate's party affiliation and effectuates compliance with the legislative mandate that only voters of the same party or unenrolled voters may subscribe to the candidate's nomination papers. G. L. c. 53, § 46. In those election cases where the procedural error was deemed not fatal,

Garrison *v.* Merced.

there was no prohibition of subscription by the voters or of circulation to the voters. See *Massachusetts Teachers Assn. v. Secretary of the Commonwealth*, 384 Mass. at 233-236 (defects in the Attorney's General's summaries of the proposed law in the initiative petition for Proposition 2½); *Gibbons* v. *State Ballot Law Commn.*, 387 Mass. at 347-350 (referendum petition not invalidated by improper inclusion of three out of ten required names).

Here, it appears that it was the intent of the legislative directive in § 45 to leave no room for discretion to election officials in order to minimize controversy and to provide clear guidelines for the nomination process. The distinction between words of command and words of discretion, such as "shall" and "may" have been carefully observed in our statutes. *Brennan* v. *Election Commrs. of Boston*, 310 Mass. 784, 786 (1942). We should not in any case lightly conclude that the distinction by the Legislature has been overlooked. *Ibid.* To construe § 45 otherwise would render nugatory the prohibition imposed by the Legislature that nomination papers for State primaries without this information are not to be circulated. Statutes are not to be "construed in such a way as to make a nullity of pertinent provisions. . . ." *Manning* v. *Boston Redev. Authy.*, 400 Mass. 444, 453 (1987).

Moreover, we note that the Legislature has not provided any penalty for failure to comply with the prohibitions of § 45. When a statute is clear and unambiguous, its plain language must be given effect. *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.* 406 Mass. 162, 167 (1989).

*Judgment affirmed.*


FINE, J. (dissenting). While I agree with much of what is stated in the majority opinion, I would reach a different result. The requirements of the statute are certainly clearly stated in mandatory terms, and there was not in this case absolute compliance with those requirements. The nomination of candidates for office, however, is an integral part of

the election process, and laws governing elections are construed generally in light of their purpose to prevent fraud, not to frustrate the expression by voters of their preferences. See *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 277 (1932). Citing numerous cases, the majority recognizes that "exceedingly technical arguments should not block access to the ballot." See also *Colten* v. *Haverhill*, 409 Mass. 55, 60-62 (1991).

Nelson Merced, the incumbent Democratic representative in his district, submitted nomination papers containing 179 signatures. The parties agree that six of the 179 signatures are invalid, and two others are in question. Twenty-seven signatures are involved in this appeal. If at least six of those 27 signatures are valid, Merced has produced the required number of signatures (150) to entitle him to have his name appear on the ballot. Because, in my view, no valid legislative purpose would be served by striking at least six of the twenty-seven challenged signatures, I dissent from the majority opinion.

The 179 signatures were presented to the registrars on fifteen nomination papers. Only one nomination paper, which did not state Merced's party designation, failed to conform to the statutory requirements. In all other respects the twenty-seven signatures included on that paper would have been valid as they represented registered voters within the district who were either listed as Democrats or independents.

The violation was relatively minimal and clearly inadvertent, not intentional. To the extent that one of the statutory purposes in having the candidate identify his party affiliation is to enable the registrars to check the signatures to determine whether they are either registered in the same party as the candidate or are registered as independents, that purpose was satisfied here as Merced's party affiliation was listed on the other fourteen nomination papers. The more important statutory purpose, undoubtedly, was to prevent fraud and to assure that the voters signing the nomination papers were not misled as to which party's primary the candidate was seeking to enter. At least with respect to independent voters signing

the candidate's nomination papers, I agree with the majority that, absent indication of the candidate's party designation, there is a potential for misleading them as to which party's primary is involved. Because the language of the statute is so clear, a challenger of those signatures certainly should not have to carry the burden of showing that any independent voter who signed the nomination paper was actually misled. It is hard to see, however, how registered Democrats who signed the papers could have been misled by the absence of Merced's party affiliation on the nomination papers. Their signatures would have been valid only if Merced was seeking to enter the Democratic primary. If he had been seeking to enter the Republican primary, their signatures could have been successfully challenged.

The record indicates that more than half of the twenty-seven names on the challenged petition were of registered Democrats. As their number is well in excess of the six needed to bring Merced to the required number of signatures, and as no statutory purpose would be served by striking their names from the nomination papers, I conclude that the State Ballot Law Commission was not prohibited from placing Merced's name on the ballot.