**PHILLIPS PUERTO RICO CORE,
INC., Plaintiff,**

v.

**Angel ALMODOVAR, et al.,
Defendants.**

**Civ. No. 86–1495(RLA).**

United States District Court,
D. Puerto Rico.

Feb. 23, 1988.

John F. Malley, III, McConnell Valdés Kelley Sifre Griggs & Ruiz Suria, San Juan, P.R., for plaintiff.

Luis N. Blanco Matos, Dept. of Justice, Federal Litigation Div., San Juan, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

Plaintiff, Phillips Puerto Rico Core, Inc., seeks a declaratory judgment[1] to the effect that the Puerto Rico Public Service Commission, through its Commissioners, is unconstitutionally regulating the price of Liquified Petroleum Gas ("LPG") in Puerto Rico. Plaintiff alleges that these price regulation practices violate a clear United States congressional policy of promoting an unregulated market in the petroleum industry consequently making unconstitutional, by operation of the Supremacy Clause of the United States Constitution, any conflicting acts by the defendants in this federally preempted market.

Before the Court is defendants' motion to dismiss based on the alleged lack of justiciability of plaintiff's claim. Defendants argue that plaintiff lacks standing to seek a declaratory judgment and that the constitutional issue itself is not ripe simply because defendants' regulatory actions have not injured plaintiff insofar as the ratemaking by the Commission has not conflicted with the free market price of LPG.

Plaintiff opposes the motion to dismiss categorizing as "antiquated" the requirement of an injury-in-fact to form a case or controversy under Article III of the United States Constitution and advocating instead that this Court adopt a more liberal standard that "essentially requires consideration of whether, under the particular facts and circumstances of each case, the issue presented justifies adjudication." (Plaintiff's Memorandum of Law at 4). In addition, plaintiff argues that the Commission's maximum rate for LPG has become permanent thus automatically subjecting plaintiff to financial penalties should it decide to raise the price of its product above the maximum rate established by the Commission. This threat of economic harm, argues plaintiff, suffices to make this case ripe for adjudication.

## BACKGROUND

For purposes of the motion to dismiss before us we shall accept all the allegations of the complaint as true. *Williams v. City of Boston*, 784 F.2d 430, 433 (1st Cir.1986).

Since 1975, Phillips has evolved from refining LPG exclusively for internal use to becoming an active supplier of the product to wholesalers in Puerto Rico. Currently, LPG represents about 8–10% of Phillips' entire production. Its share of the local LPG market has fluctuated between 8% and 25%.

Between 1975 and 1981, Phillips' LPG sales operated pursuant to a federal policy which imposed certain controls on the allocation and price of LPG. Prices during this period fluctuated between $0.31 per gallon in 1975 to $0.63 per gallon in late 1980.

By January 1981, the federal controls were eliminated and the federal government adopted a policy of deregulation on the prices of petroleum-based products. This new policy coincided shortly thereafter, i.e., September 1981, with the expiration of Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. 751 *et seq.*, which

---

**1.** The jurisdiction of the Court is founded upon   28 U.S.C. §§ 1331, 2201–2202.

during the 1970s had heavily regulated the oil industry as a direct result of the Arab oil embargo crises. (However, since 1986, there has been a continued dramatic decrease in the worldwide price of crude oil which has caused similar substantial decreases in the price of LPG.)

It was during this time, to wit 1974, that the Supreme Court of Puerto Rico held that local regulation of LPG was preempted by the EPAA. *See CORCO v. Superior Court,* Certiorari, Civil No. 0–74–107, *re-affirmed* on reconsideration, November 4, 1974). But with the expiration of the EPAA in 1981, the Commission began anew its efforts to regulate the LPG market.

In 1982 a rate case of the Commission, Misc. No. 979, was challenged by the primary suppliers of LPG in the local market, i.e. CORCO, CARECO, Phillips and Puerto Rico Fuel, Inc. As part of this challenge, the question of continued federal preemption of the field was raised. Administrative remedies were exhausted and judicial review was requested before the Superior Court of Puerto Rico, San Juan Part, Civil No. 84–1536. The Commission then suspended all LPG regulation per Administrative Order dated February 27, 1984, pending the final outcome of the review petition which as of May 1986 was still under advisement.

On March 27, 1986, the Commission, based on Act No. 5 of March 18, 1986 (imposing a tariff on crude oil and its derivatives) created another rate case, Misc. No. 1148, freezing LPG prices. This action was stricken by the Superior Court of Puerto Rico as *ultra vires* as applied to importers and producers of LPG, Civil No. 84–1536, May 5, 1986. In response, the Legislative Assembly immediately amended Act No. 5 to give the Commission jurisdiction over said importers and producers. With this new-found authority, the Commission proceeded to request certain information from plaintiff and to set a maximum price of LPG per gallon. All these acts were dutifully challenged by Phillips pursuant to the proper administrative reconsideration procedures. By July 22, 1986, the Commission had refused to consider its original stance, and thus implicitly it refused to recognize Phillips' contention of continued federal preemption in the LPG market.

Since then, the Commission has continued to regulate the market but its rate limits have consistently been significantly above the price of LPG in the local market, thus no specific conflict has arisen and Phillips has not been subjected to any penalties.

## DISCUSSION

The sole issue before the Court is whether or not the present case is justiciable. Defendants allege that plaintiff's claim does not present an Article III case or controversy because it lacks ripeness and standing. It is not ripe because there is no legal controversy insofar as the market price of LPG has always been below the maximum rate set in rate case number Misc. 1159. And there is no standing since plaintiff has suffered no injury-in-fact and instead merely speculates that the prices may conflict and it may then face penalties. Defendants respond, however, that they may never enforce the regulation against plaintiff even in the unlikely event that the market prices of LPG would rise above the maximum rate in Misc. 1159. Thus, argue defendants, the mere potential of conflict and/or enforcement does not an Article III make and therefore the complaint should be dismissed.

The justiciability doctrine sets forth fundamental limits in a tripartite system of government. As the Federal Supreme Court explained in *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed. 2d 556 (1982):

the case or controversy requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded. The several doctrines that have grown up to elaborate that requirement are "founded in a concern about the proper and properly limited-role of the courts in a democratic society" *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, [2205] 45 L.Ed.2d 343 (1975).

■ The Judicial Branch should only adjudicate those claims capable of resolution through the judicial process between parties whose interests are juxtaposed. This adverseness "sharpens the presentation of the issues upon which the Court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ The principle of standing differs from the rest of the ingredients that form the principle of justiciability because it focuses on the party seeking the adjudication of his claim, not on the merits of the claim itself. "In essence the question of standing is whether the litigant is entitled to have the Court decide the merits of the dispute or of a particular issue." *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2205. Standing, as opposed to ripeness, concerns the proper party to bring suit, not the propriety of the suit itself. The litigant must have suffered an "injury in fact" *Association of Data Processing Service Organization, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), which must be "distinct and palpable," *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting *Warth v. Seldin,* 422 U.S. at 501, 95 S.Ct. at 2206), and not "abstract," "conjectural" or "hypothetical" *Los Angeles v. Lyons,* 461 U.S. 95, 101–102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974). Standing may also be obtained if the threat of enforcement is so significant that an injury will certainly follow.

■ When the injury is not actual but threatened, the concepts of standing and ripeness merge. A litigant may lack standing because what has happened to him has not developed into an injury in fact and that is the core of the ripeness doctrine. To determine if an issue is ripe for review one has "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The concern is one of avoiding premature adjudication by awaiting final administrative actions and sufficiently developed factual situations to put the Court in a position to decide the legal issues. Thus a case may be fit for adjudication as to the purely legal issues but still not ripe because no hardship (read "injury") has been proven.

■ In this case the issue is fit for judicial decision. The Commission has engaged in ratemaking actions that apply to plaintiff. Plaintiff contends that the Federal Policy of a deregulated market preempts the field. The controversy is afoot, and is susceptible of resolution through the judicial channel, but it is not ripe because the plaintiff has suffered no hardship. Neither in the complaint, or in a later motion discussing renewed ratemaking actions by defendants, does plaintiff allege to have suffered any harm, economic or otherwise. Neither do the regulations have "immediate coercive consequences," *Lake Carriers Association v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), because plaintiff does not contend to have taken any actions detrimental to himself in compliance with the regulations. Plaintiff has not been forced "to choose between compliance, at some present cost, and failure to comply, at the risk of legal penalty," *South Carolina Electric and Gas Co. v. I.C.C.,* 734 F.2d 1541 (D.C.Cir. 1984), because the price of LPG has been below the maximum price established by the Commission.

Plaintiff may be able to show that it would suffer immediate coercive consequences that would force it to choose between compliance and non-compliance only if the LPG price conflicts with the maximum price set by the Commission. But the prices may never conflict, and it would be speculative to predict when these prices will in fact conflict. For hardship to exist it is necessary that "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs" and there must be "irremediable adverse consequences /which/ flow from requiring a later challenge." *Id.* quoting *Toilet Goods*

*Association v. Gardner,* 387 U.S. 158 at 164, 87 S.Ct. 1520 at 1525, 18 L.Ed.2d 697.

Plaintiff has not shown that such a hardship exists. Nor is there an allegation that the potential conflict with the price fixing scheme has chilled capital investment in, or affected in any other way, the future plans of plaintiff. *See Pacific Gas and Electric v. ST. Energy Resources Conserv.,* 461 U.S. 190, 103 S.Ct. 1713 at 1721, 75 L.Ed.2d 752; *Pierce v. The Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). All this together with the possibility that the prices may never conflict creates too much uncertainty to ripen the case.

Should the prices conflict in the future and should defendant choose to enforce the regulation or should the threat of the same be truly impending, *see O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) and *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923), then plaintiff may show the necessary injury requirement that it lacks at present to constitute an Article III case or controversy.

In the *Isla Petroleum Corp. v. Department of Consumer Affairs,* 640 F.Supp. 474 (D.P.R.1986) *aff'd,* 811 F.2d 1511 (T.E. C.A.1986), *cert. granted* — U.S. ——, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987) case in which plaintiff relies, the plaintiffs demonstrated that their economic injury was immediate.

The *Isla* plaintiffs passed the two-prong test imposed by the ripeness doctrine even though ripeness was not challenged in that case. They demonstrated that the issue was fit for review and that extreme hardship would follow if the Court withheld decision. In this case, Phillips failed the second prong aspect of the ripeness test. Phillips has not presented any allegations of injury, has not demonstrated "a realistic danger of sustaining a direct injury." *O'Shea v. Littleton,* 414 U.S. at 494, 94 S.Ct. at 675, or any certainty that the injury in fact will occur, or is impending. *Pennsylvania v. West Virginia,* 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923).

Even under the most liberal of standards enunciated by the Supreme Court, *see Babbitt v. United Farm Workers National Unit,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed. 2d 895 (1979) and *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), plaintiff's action is not ripe. Not only is there no history of prosecution under rate case Misc. 1159, but it is not possible for there to be any prosecution until Phillips raises the price for LPG such that it conflicts with the regulation, a highly unlikely event given the present market conditions of low oil prices. And even then, it is entirely possible that the Commission would not enforce the regulation thus keeping the issue unripe. *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

In sum, though the preemption issue raised in plaintiff's complaint is well defined, purely legal, and fit for review, plaintiff has failed to show the degree of hardship sufficient to make his case ripe. Therefore we have no Article III jurisdiction over the present case and the same must be dismissed.

### CONCLUSION

In accordance with the above, defendants' motion to dismiss is hereby GRANTED and the complaint in the case at bar is hereby DISMISSED. Judgment to be entered accordingly.

IT IS SO ORDERED.