**Nereida Morales GUADARRAMA, et al., Plaintiffs,**

v.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD), et al., Defendants.**

**No. 99–1557 DRD.**

United States District Court, D. Puerto Rico.

Sept. 30, 1999.

Nora Vargas–Acosta, Rio Piedras, PR, Juan F. Correa–Luna, Legal Community Office, Carolina, PR, Hector J. Perez–Rivera, Goldman Antonetti & Cordova, San Juan, PR, for plaintiffs.

Francisco E. Colon–Ramirez, Colon, Colon & Martinez, San Juan, PR, David Efron, Rio Piedras, PR, Jose L. Gonzalez–Castaner, Gonzalez–Castaner, Morales & Guzman, San Juan, PR, Humberto Guzman–Rodriguez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Roberto Sanchez–Ramos, Federal Programs Branch, Civil Division, U.S. Department of Justice, Washington, DC, John Schumann, Federal Programs Branch, Civil Division, U.S. Department of Justice, Washington, DC, Fidel A. Sevillano–Del–Rio, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, Rafael A. Vila–Carrion, Vila–Carrion & Burgos, Hato Rey, PR, for defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court are Federal and State Defendants' motions and supplemental motions to dismiss or for summary judgment under Fed.R.Civ.Proc. 12(b)(1), 12(b)(6) and 56 (Docket No. 19, 22, 30 and 31). The Court has reviewed the record, including Plaintiffs' oppositions to these motions, and determines that, for the reasons set forth below, each of these motions will be GRANTED and this action will be DISMISSED WITHOUT PREJUDICE as to plaintiffs Margarita Sánchez Cruz, Dennisse Shepherd Fraser, Jahaira Cardona, Arcadio Aponte Agosto, María Calvente, Luis Vargas, Miguel A. Dávila, and Rosa Rodríguez; and DISMISSED WITH PREJUDICE as to plaintiffs Nereida Morales Guadarrama, Crucita Pino Hernández, and Angel L. Vargas.

## I. BACKGROUND

Plaintiffs, eleven residents of public housing projects in Puerto Rico, bring this action for temporary restraining order, damages, and preliminary and permanent injunctive order against the U.S. Department of Housing and Urban Development ("HUD") and the HUD Secretary (collectively, "the Federal Defendants"); the Puerto Rico Department of Housing ("PRDH"), the PRDH Secretary, the Puerto Rico Public Housing Authority ("PRPHA"), and the PRPHA Administrator (collectively, "the State Defendants"); and four private corporations that have administered various public housing projects in Puerto Rico. All plaintiffs, except Luis Vargas, have been sued for eviction in Puerto Rican courts by the administrators of their housing projects on account of lease violations in connection with certain criminal activity engaged in by members or guests of their respective households. (Complaint at 3–19.) Some of the eviction cases are currently in progress: Margarita Sánchez Cruz, District Court of San Juan Civil Case # 99–111–courtroom 604; Dennisse Shepherd Fraser, District Court of San Juan Civil Case # KPE–99–1–93; Jahaira Cardona, District Court of San Juan Civil Case # 98–9845–courtroom 604; Arcadio Aponte Agosto, District Court of San Juan Civil Case # 98–9834–courtroom 506; Mará Calvente, District Court of San Juan Civil Case # 98–9841–courtroom 506; Margarita Sánchez, District Court of San

Juan Civil Case # 99–111–courtroom 604; Miguel A. Dávila, District Court of San Juan Civil Case # 98–9837. Others have terminated: Crucita Pino Hernández, Court of the First Instance of Puerto Rico Case No. APE–06–0067, judgment notified on January 7, 1998 (Docket 22, Exh. 5); Nereida Morales Guadarama, Court of the First Instance of Puerto Rico Case No. CPE97–0156 (Docket No. 22, Exh. 8 & 9), judgment affirmed by the Circuit Court of Appeals, notified on February 5, 1999 (Docket No. 22, Exh. 9), reconsideration denied, notified on March 10, 1999 (Docket No. 22, Exh. 10).

The lease covenants which have allegedly been violated by plaintiffs read as follows:

C. The housing shall only be used as the private domicile for the Lesee and the members of the family group identified herein and [the Lesee] shall not use or allow any member of the family group or guest to use the premises for activities affecting the physical or social environment of the project; nor for criminal activities, as for instance, the violation of the criminal codes and laws of the Commonwealth of Puerto Rico and those of the United States of America, nor any criminal activities within or near the residence; regarding the sale of drugs, narcotics, weapons and gambling. The term "Criminal Acitivities Related to Drugs" shall means [sic]: The illegal manufacturing, fabrication, sales, distribution, transportation, use or possession with the intention of fabricating, using, selling, distributing, transporting or the use of controlled substances as defined by Section 102 of the Controlled Substances Act (21 U.S.C. § 802) or by the Controlled Substances Act of Puerto Rico, 24 LPRA, Section 2101 and subsequent. Such criminal conduct shall be cause for cancellation of the Public Housing Lease Agreement, regardless of the fact of the judicial action taken in the case. (Evidence found shall be sufficient cause.)

(Docket No. 19, Exh. 1).

The above provisions were incorporated into the PRDH's contracts as part of the application and implementation of the "One Strike Your Out" policy signed into law in 1996 by President Clinton, 42 U.S.C. § 1437d(1)(6) [1] (hereinafter "Housing Act"), and reiterated by HUD regulation 24 C.F.R. § 966.4(f)(12) [2]. As amended, the Housing Act requires public housing authorities receiving funding through HUD to use leases that "provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off the premises, engaged in by a public housing

---

**1.** The law states, in pertinent part:

(1) Each public housing agency shall utilize leases which—

(6) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.

**2.** The regulation states in pertinent part:

(f) Tenant's obligations. The lease shall provide that the tenant shall be obligated:

(12)(i) To assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in:

(A) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the PHA's public housing premises by other residents or employees of the PHA, or

(B) Any drug-related criminal activity on or near such premises.

Any criminal activity in violation of the preceding sentence shall be cause for termination of tenancy, and for eviction from the unit.

(ii) For purposes of subparts A and B of this part 966, the term drug-related criminal activity means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)).

tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U.S.C. § 1437d(1)(6).

As a basis for their suit plaintiffs contend that the "One Strike and You're Out" policy violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06; various provisions of the United States Housing Act of 1937 ("the Housing Act"), 42 U.S.C. § 1437 et seq.; the Civil Rights Act, 42 U.S.C. § 1983; the First, Eighth and Fourteenth Amendments to the United States Constitution; and the constitution and laws of Puerto Rico, in that the policy causes the termination of the tenants' leases despite the tenants' innocence from criminal behavior.[3] That is, plaintiffs argue that the policy is unlawful and unconstitutional so far as it allows the termination of their leases absent any evidence that they knew about their guests' or household members' illegal activities or had the ability to control their guests' or household members' criminal conduct.[4] The Federal Defendants and the State Defendants move to dismiss or for summary judgment pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 56.

## II.

### Preliminary Matters

■ Before plaintiffs can have access to this Court's equitable powers, plaintiffs must pass the constitutional hurdle of the "case or controversy" requirement, statutory bars to equitable reliefs (i.e., Anti–Injunction Act, 28 U.S.C. § 2283), and the doctrine of judicial self-restraint regarding the proper exercise of federal jurisdiction. Should there not be a "case or controversy" under Article III, section 2 of the Constitution, the District Court is barred from entertaining the merits of the case. *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Because defendants question plaintiffs' ability to survive these preliminary stages, allegedly because there is no "case or controversy", this Court has stayed the proceedings for resolution of defendants' motions to dismiss or for summary judgment. *Id.* (standing for the proposition that a motion to dismiss based on lack of "case or controversy" must be entertained and resolved by the trial court prior to proceeding with the merits of the case).

## III.

### STANDARDS FOR MOTION TO DISMISS AND SUMMARY JUDGMENT

■ Rule 12(b)(6) and 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE provide that a defendant may, in response to an

---

**3.** "Innocent tenants" as envisioned by plaintiffs are tenants that did not violate the law themselves, the illegal act being committed by a third party, another member of the household, an agent or another person, the tenant not having any criminal responsibility relating to these persons.

**4.** Although this case is dismissed without reaching the merits of plaintiffs' claims, the Court notes a recent decision in which the Court of Appeals of Tennessee was faced with a question similar to the one in the case at bar. In *Memphis Housing Authority v. Thompson,* 1999 WL 551162 (Tenn.App. 1999), a plaintiff sued the Memphis Housing Authority (MHA) for terminating her lease agreement after she failed to stop a guest from engaging in drug-related criminal activity in plaintiff's apartment. The Court held that plaintiff's lease, which incorporated the "One Strike and You're Out" policy, allowed the MHA to terminate the lease despite not having evidence that plaintiff knew of or had control over her guest's criminal conduct. Prior thereto, the Fifth Circuit, in the case of *Chavez v. Housing Authority of City of El Paso,* 973 F.2d 1245 (5th Cir.1992), also found constitutional a similar "One Strike and You're Out" disposition incorporated into a housing regulation pursuant to 24 C.F.R. § 966.4(f)(11). Similarly, an appellate state court in California, in the case of *City of San Francisco Housing Auth. v. Guillory,* 49 Cal. Rptr.2d 367, 41 Cal.App.4th Supp. 13 (Cal.Super.1995), also held constitutional a similar disposition.

initial pleading, file a motion to dismiss the complaint for lack of jurisdiction or for failure to state a claim upon which relief can be granted, respectively. It is well-settled, however, that a complaint should not be dismissed unless it appears beyond any doubt that the plaintiff can prove no set of facts which would support a claim entitling him or her to relief. *Ronald C. Brown v. Hot, Sexy, and Safer Productions, Inc.*, 68 F.3d 525 (1st Cir.1995); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir.1991). The Court must accept as true the well pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences from the allegations in favor of the plaintiff. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2577, 49 L.Ed.2d 493 (1976); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994). However, "[b]ecause only well pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993).

■ In opposing a Rule 12(b)(6) motion to dismiss, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. *Id.* at 23 (citing *Correa–Martinez*, 903 F.2d at 52); *Dartmouth Review*, 889 F.2d 13, 16 (1st Cir.1989); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957). Plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

■ Moreover, when the parties have added documents outside of the pleadings to the 12(b)(6) motion, Rule 12(b) allows the Court to convert the motion to dismiss into a motion for summary judgment under FED.R.CIV.PROC. 56. *Garita Hotel, Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 18–19 (1st Cir.1992). The approach employed in making this conversion is a "functional approach." If documents outside the pleadings are included and the Court uses those documents in making its determination, the Court will adjudicate the movant's motion following the standards for summary judgment. *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 43 (1st Cir.1998).

The Court will grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). To defeat a motion for summary judgment, the resisting party will have to show the existence of "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 48 (1st Cir.1990). "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry*, 111 F.3d at 187. The movant of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." *Vega–Rodriguez*, 110 F.3d at 178. Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment." *Cortes–Irizarry*.

111 F.3d at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood ..." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

In the instant case defendants' motions and plaintiffs' oppositions have been accompanied with documents which attempt to show the inexistence or existence, respectively, of any genuine issue of material fact. The Court has considered these documents in reaching its determination. Accordingly, defendants' motions are adjudicated under the standards set forth above for motions for summary judgment.

## IV.

### CASE OR CONTROVERSY AND STANDING TO SUE

Defendants challenge the standing to sue of eight out of the eleven plaintiffs. These plaintiffs are all still living in their respective apartments and have eviction cases which are pending in the state courts.[5] (Docket No. 17, ¶¶ 12, 16, 21, 33, 46, 58, 61, 69, and 81) Until the eviction rulings of the local courts are. issued and executed, defendants argue that the risk of injury is only hypothetical and thus not enough to present a case or controversy

actionable in the federal courts. If these plaintiffs were to prevail in the state court proceedings, these plaintiffs would never suffer any actionable injury from defendants' actions and the Court's intervention would become a mere advisory role in violation of the Constitution.

 The jurisdictional requirement of standing derives from Article III, section 2 of the Constitution, which confines federal court jurisdiction to "cases" or "controversies". *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To have standing, plaintiff must meet the following requirements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical, ....'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court...." Third, it must be "likely," as opposed to "merely speculative," that the injury will be "redressed by a favorable decision...."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations and footnote omitted).

 Further, when a plaintiff's injury is not actual but threatened, the concepts of standing and ripeness merge and the

---

**5.** The pending state eviction proceedings are against Margarita Sánchez Cruz, District Court of San Juan Civil Case # 99–111–courtroom 604; Dennisse Shepherd Fraser, District Court of San Juan Civil Case # KPE–99–1–93; Jahaira Cardona, District Court of San Juan Civil Case # 98–9845–courtroom 604; Arcadio Aponte Agosto, District Court of San

Juan Civil Case # 98–9834–courtroom 506; María Calvente, District Court of San Juan Civil Case # 98–9841–courtroom 506; Margarita Sánchez, District Court of San Juan Civil Case # 99–111–courtroom 604; Miguel A. Dávila, District Court of San Juan Civil Case # 98–9837. There are no proceedings against Luis Vargas.

Court must determine whether plaintiff's case is ripe. A litigant's claim may lack ripeness when "what has happened to him has not developed into an injury in fact ... To determine if an issue is ripe for review one has 'to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The concern is one of avoiding premature adjudication by awaiting final administrative actions and sufficiently developed factual situations to put the Court in a position to decide the legal issues. Thus a case may be fit for adjudication as to the purely legal issues but still not ripe because no hardship (real "injury") has been proven." *Phillips Puerto Rico Core Inc. v. Almodovar*, 681 F.Supp. 119, 122 (D.P.R.1988).

In the case at hand the Court finds defendants' standing and ripeness challenges to be well founded. Following is a discussion of each plaintiff's claims and the reasons for the Court's determination.

*A. Plaintiffs Margarita Sánchez Cruz, Dennisse Shepherd Fraser, Jahaira Cardona, Arcadio Aponte Agosto, and María Calvente*

■ Plaintiffs Margarita Sánchez Cruz, Dennisse Shepherd Fraser[6], Jahaira Cardona, Arcadio Aponte Agosto, and María Calvente each seek to challenge the federal regulation at issue, 24 C.F.R. § 966.4(f)(12), prior to the completion of state eviction proceedings based upon a lease provision mandated by the challenged regulation. As the record shows, none of these plaintiffs present reasons why they may not present their challenges to 24 C.F.R. § 966.4(f)(12) as they oppose their eviction complaints in the local courts. On the contrary, plaintiffs simply argue that they have already suffered an injury because they have received unlawful notices to evict and are now being sued for resisting such notices. (Docket No. 64, at pgs. 10–12)

■ There are two reasons why the Court should refrain from exercising jurisdiction over these plaintiffs' claims. First, through their own actions the above–mentioned plaintiffs have been spared from the injury that inspires their federal claim. By resisting their notices to evict and causing state court judicial eviction procedures to be filed against them, plaintiffs have postponed the imminence of their threatened injury and turned it into a conjectural or hypothetical injury. In this respect the Court notes that these plaintiffs may prevail in the state court proceedings either under state law or federal law, thus leaving the Court without any injury to redress.[7] That is, if plaintiffs prevail in the local eviction actions being held against them, be it because they were served with unlawful notices in violation of Puerto Rico's due process clause and their lease agreements or because the state courts uphold their challenge to 24 C.F.R.

---

6. Plaintiff Denisse Shepherd faces an additional high hurdle. Her case is different from that of the other plaintiffs because her injuries will not be ultimately "redressed by a favorable decision" from this Court. *Lujan*, 504 U.S. at 560–561, 112 S.Ct. at 2136. The present cause of action has been brought to challenge the validity of evictions that are based on criminal activity by an "innocent" tenant's household members or guests, causing the termination of the tenant's lease contract. Plaintiff Shepherd, however, is risking eviction because she, not her household members or guests, committed the actions that gave rise to the eviction complaint filed against her. (Docket No. 17, ¶ 25)

7. Federal courts do not decide federal constitutional issues unless other alternate state statutory or constitutional avenues in deciding the case have been exhausted. Plaintiffs could technically prevail in local courts under alternate state statutory or constitutional grounds. *Public Service Co. of New Hampshire v. Patch*, 167 F.3d 15, 24 (1st Cir.1998); *Pustell v. Lynn Public Schools*, 18 F.3d 50 (1st Cir.1994); *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 988 F.2d 252 (1st Cir.1993); *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

§ 966.4(f)(12), plaintiffs will have suffered no actionable injury and this Court will have lost any basis upon which to entertain their challenge to the federal regulation. Moreover, even if the local courts do issue an eviction order, the plaintiffs will have had a full opportunity to be heard and have their federal claims adjudicated by the local appellate courts and ultimately by the United States Supreme Court. *See Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Thus, these plaintiffs lack standing to pursue their federal causes of action before this federal court.

 Second, even if the plaintiffs have an injury, under the *Colorado River* doctrine the Court should abstain from exercising its jurisdiction while plaintiffs litigate their claims in the state courts. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court established that in "exceptional circumstances", a district court may stay or dismiss a federal law suit in deference to parallel state proceedings. To determine whether exceptional circumstances exist, *Colorado River* mentioned four illustrative factors: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court added three additional factors: (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' rights; and (7) the vexatious or reactive nature of the federal lawsuit. The weight courts should provide to each particular factor vary according to each case and no one factor is necessarily determinative. In

the end, the decision whether or not to surrender jurisdiction will be left to the discretion of the trial court. *Id.* at 19, 103 S.Ct. at 938. *See also Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46 (1st Cir.1995).

A brief review of the record before the Court reveals that· the application of the *Colorado River* and *Moses H. Cone* factors to the case at hand guides the Court to abstain from exercising its jurisdiction over the above–mentioned plaintiffs' claims. Allowing plaintiffs to pursue their challenge to HUD's regulation in this Court would simply result in piecemeal litigation in a case in which state courts have previously exercised jurisdiction. Plaintiffs have not suggested any reasons why the state forum will inadequately protect their rights and this Court is of the opinion that plaintiffs' case constitutes a reaction to the state claims brought against them. In an exercise of its discretion, therefore, the Court abstains from exercising jurisdiction in deference to the pending state court proceedings.

### B. *Plaintiff Luis Vargas*

 Plaintiff Luis Vargas's allegations place him in an even more removed position than the above plaintiffs. Luis Vargas has received no termination notice from defendants nor has an eviction action been filed against him. In fact, Luis Vargas has not even identified what provision of the lease he may have violated. (Docket No. 17, ¶¶ 58–60) To state it simply, Luis Vargas is no more than an uninjured person with a mere interest in this litigation.[8] Accordingly, Luis Vargas lacks standing to pursue this federal claim.

### C. *Plaintiffs Miguel A. Dávila and Rosa Rodríguez*

 Finally, this Court finds that recent events have dissipated plaintiffs Mi-

---

**8.** The injury in fact inquiry serves to distinguish a person with a direct stake in the outcome of a litigation from a person with a mere interest in the problem. *U.S. v. Stu-*

*dents Challenging Regulatory Agency Procedures*, 412 U.S. 669, 690 n. 14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

guel A. Dávila and Rosa Rodríguez's imminent threats of injury and placed them in the same position as plaintiffs Margarita Sánchez Cruz, Dennisse Shepherd Fraser, Jahaira Cardona, Arcadio Aponte Agosto, and María Calvente. Although plaintiffs Dávila and Rodríguez did in fact receive an apparently invalid eviction order from a state court, the attorney who procured that order on behalf of the project administrator has since filed an unopposed motion to vacate the eviction order. (Docket No. 17, ¶¶ 79, Exh. G.) Should this motion be granted, as is anticipated by the District Court, plaintiffs Dávila and Rodríguez will be relieved from any imminent threat of injury. Accordingly, any potential threat of injury they may be experiencing at this time is merely conjectural or hypothetical and not enough to confer them with standing to litigate their challenge in this federal court.

In concluding, this Court finds that the injuries asserted by plaintiffs Margarita Sánchez Cruz, Dennisse Shepherd Fraser, Jahaira Cardona, Arcadio Aponte Agosto, Maria Calvente, Luis Vargas, Miguel A. Dávila, and Rosa Rodríguez are only "conjectural or hypothetical", not "actual or imminent". *Lujan*, 504 U.S. at 560–561, 112 S.Ct. at 2136. Further, the Court finds that, even if plaintiffs have an injury, abstaining from exercising its jurisdiction over these plaintiffs' claims is in the best interest of "wise judicial administration", "conservation of judicial resources", and "comprehensive disposition of litigation". *Moses H. Cone*, 460 U.S. at 15, 103 S.Ct. at 936. Their causes of action are all dismissed without prejudice since the Court is concluding that at this moment they do not have an "injury" under federal law standards.

## V.

### COLLATERAL ESTOPPEL

[16] Defendants also contend that the doctrines of nonmutual defensive collateral estoppel and *Rooker–Feldman* bar the claims asserted by the remaining three plaintiffs: Nereida Morales Guadarrama, Crucita Pino Hernández, and Angel L. Vargas (plaintiff Pino Hernández's spouse). Said plaintiffs have already unsuccessfully litigated their rights to possession of their dwelling units in eviction proceedings for which final, firm and unappealable judgments have been issued by the Puerto Rico courts.[9] Thus, defendants argue, each of these plaintiffs is barred by collateral estoppel from relitigating issues previously litigated or that could have been litigated in the state court proceedings. Irrefutably, the doctrines cited by defendants stand for the propositions that this federal court must give full faith and credit to a final judgment by the Puerto Rico courts, and, thus, this court lacks subject matter jurisdiction to entertain a controversy previously adjudicated by the Puerto Rico courts. *See: District of Columbia Ct.App. v. Feldman*, 460 U.S. 462, 482–86, 103 S.Ct. 1303, 1315–1317, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *see also Henry v. Connolly*, 910 F.2d 1000, 1002 (1st Cir.1990) ("A federal court cannot presume to sit in direct appellate review of final state court determinations in judicial proceedings."); *International Cement Aggregates, Inc. v. Antilles Cement Corp.*, 62 F.Supp.2d 412, 414 (D.P.R.1999) ("Lower federal courts generally do not have jurisdiction to review state court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United State Supreme Court. This principle is known

---

9. Judgments against these plaintiffs were issued as follows: Crucita Pino Hernández, Court of the First Instance of Puerto Rico Case No. APE–06–0067, notified on January 7, 1998 (Docket 22, Exh. 5); Nereida Morales Guadarama, Court of the First Instance of

Puerto Rico Case No. CPE97–0156 (Docket No. 22, Exh. 8 & 9), affirmed by the Circuit Court of Appeals, notified on February 5, 1999 (Docket No. 22, Exh. 9), reconsideration denied, notified on March 10, 1999 (Docket No. 22, Exh. 10).

as the Rooker–Feldman doctrine."); *see also Baez–Cruz v. Municipality of Comerio,* 140 F.3d 24, 28 n. 1 (1st Cir.1998). Moreover, " 'lower federal courts possess no power to sit in direct review of state court decisions.' [Citations omitted.] If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's [judgment] . . ., then the District Court is in essence being called upon to review the state-court decision. This the District Court [of Puerto Rico] cannot do." *U.S. Industries v. Laborde,* 794 F.Supp. 454, 463 (D.P.R.1992), citing *Atlantic Coast Line R. Co. v. Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970).

 It is equally clear that under Puerto Rico law the doctrines of *res judicata* and collateral estoppel preclude relitigation of claims and/or issues which have been **or could have been litigated in a prior judicial** action for which judgment has been rendered. [emphasis added] *Baez–Cruz v. Municipality of Comerio,* 140 F.3d 24 (1st Cir.1998); *Sahar Fatach v. Seguros Triple S, Inc.,* 1999 WL 202852, 99 TSPR 41 (Puerto Rico). *See generally, Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). Specifically, under the defensive use of the doctrine of collateral estoppel, a defendant can prevent a plaintiff from relitigating a claim that the plaintiff has already lost, even if against another defendant. *See Sahar Fatach,* 1999 WL 202852, *Parklane,* 439 U.S. at

326 n. 4, 99 S.Ct. at 649; and *Mendoza,* 464 U.S. at 159, 104 S.Ct. at 571–572.[10]

The above stated doctrine was applied by the First Circuit to a § 1983 claim similar to the one alleged by plaintiffs in the instant case:

"It is well established that a federal court in a § 1983 action must give full preclusive effect to state court judgments adjudicating both issues and claims. *See Arecibo Radio Corp. v. Puerto Rico,* 825 F.2d 589, 591–92 (1st Cir.1987). *See also Cuesnongle v. Ramos,* 835 F.2d 1486, 1497 n. 8 (1st Cir. 1987); *Cinelli v. City of Revere,* 820 F.2d 474, 479 (1st Cir.1987) (citing *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); *Isaac v. Schwartz,* 706 F.2d 15, 16 (1st Cir.1983). The Supreme Court has held that under the federal full faith and credit statute, [28 U.S.C. § 1738] federal courts in § 1983 actions must accord the same preclusive effect to state court judgments—both as to claims and issues previously adjudicated—as would be given in the state court system in which the federal court sits. *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 83–84, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984). The Court has rejected the notion that in the § 1983 context, "distrust of state courts . . . would justify a limitation on the preclusive effect of state judgments," and has instead stressed the need to accommodate "notions of comity, [and to] . . . prevent vexatious litigation." *Migra,* 465 U.S. at 84, 104 S.Ct. at 898. Federal courts must therefore look to state law to determine whether a party to a § 1983 action will be barred from relitigating an issue previously presented in state court (issue preclusion), or from raising a claim that could have been presented in the state proceeding (claim preclusion). *Id.*

**10.** Even if this Court were to apply federal principles of *res judicata,* the result would be identical. "A final judgment on the merits of an action precludes the parties or their privies

from relitigating claims that were raised or **could have been raised in that action.**" [emphasis added] *Apparel Art Int'l, Inc. v. Amertex Ltd.,* 48 F.3d 576, 583 (1st Cir.1995).

\*\*\*

If, as we assume, Willhauck did not raise his facial attack to section 25—or an as-applied challenge to the conduct of MDC Officer Halpin—in the course of that prosecution for violation of that statute, he was precluded from raising it subsequently in his § 1983 action under the doctrine of claim preclusion. As we observed in *Roy v. City of Augusta*, 712 F.2d 1517, 1521 (1st Cir.1983), 'state courts, too, are guardians of the federal constitution.' When a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. Where it is not, the party is barred by principles of res judicata from later raising the constitutional claim against the same parties in a federal section 1983 action. Id. (citations omitted). On the other hand, if Willhauck did raise an unsuccessful attack on section 25 in the Suffolk County prosecution, Willhauck's only recourse for an erroneous denial of his constitutional claims would have been to pursue the denial of his facial challenge through the state courts and then by writ of certiorari to the United States Supreme Court."

*Willhauck v. Halpin*, 953 F.2d 689, 704–706 (1st Cir.1991).

 Further, this Court may not set aside the state court judgment of eviction because plaintiffs have invoked the Civil Rights Act. "A complaint under the Civil Rights Act does not provide the springboard for an unhappy state litigant to raise his federal claims de novo in federal court." *Fortune v. Mulherrin*, 533 F.2d 21, 22 (1st Cir.1976), *cert. denied*, 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976).

As it appears from the record, plaintiffs Morales Guadarrama and Pino Hernández have already had an opportunity to litigate their challenge to 24 C.F.R. § 966.4(f)(12). The causes of action filed against them in state court sought plaintiffs' eviction from their residences for violation of their lease agreements. The specific provisions which were allegedly violated are the ones which were included in plaintiffs' lease agreements pursuant to the regulation plaintiffs are now challenging before this federal court. As in *Willhauck*, if plaintiffs Morales Guadarrama and Pino Hernández appeared before the state court and failed to raise their attack or unsuccessfully litigated their challenge to the validity of the regulation, or if plaintiffs failed to reserve their alleged federal rights by notifying the state court of their intentions under the *England* Reservation Doctrine, *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), plaintiffs are now precluded from raising that same issue before this federal court.[11] It is irrelevant that the broad issue before the state court is different from the one before this Court or that some of the defendants now raising the collateral defense before this Court were not parties before the state court. What is relevant under the doctrine of collateral estoppel is that one of the issues of law that was litigated or should have been litigated by the defendants in state court, whether the regulation requiring the lease provisions was valid or not, is the same one that is now being attacked by the plaintiffs in this federal court. *Mendoza*, 464 U.S. at 158, 104 S.Ct. 568.[12] This plaintiffs may not do.

---

**11.** Even when a party alleges violation of its constitutional rights, if these were not raised at the state courts, the party is precluded from raising the issue. *See Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.1974). A final state court decision precludes those issues actually litigated and decided by the first judgment, as well as those unlitigated, when no reservation of constitutional or federal statutory rights was not expressly made. *Id.; England v. Louisiana State*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440; *U.S. Industries, Inc.*, 794 F.Supp. at 464.

**12.** Plaintiffs again raise the argument that the state proceedings against them were not valid because of a defect in the notices for the administrative grievance procedures held

The doctrine of collateral estoppel also precludes plaintiff Angel Vargas from challenging HUD's regulation before this federal court. As previously stated, in determining a judgment's preclusive effects, federal courts are to apply the law of the forum, *Baez Cruz*, 140 F.3d at 28–29. Under Puerto Rico law, a judgment entered against one spouse is binding upon the other by virtue of each spouse's role as administrator of the conjugal relationship. *Blas Toledo v. Hospital Nuestra Senora De La Guadalupe*, 1998 WL 476260 (1998); *Pauneto v. Nunez*, 115 D.P.R. 591, 1984 WL 270910 (1984); *International Charter Mortgage Corp. v. Registrador*, 118 D.P.R. 911 (1987). That is, although the best litigation practice is to sue and serve with summons both members of the conjugal partnership, the Supreme Court of Puerto Rico has recognized that "both spouses are co-administrators of the conjugal partnership and, therefore, both are, ordinari-

ly, capable of representing it." *Pauneto*, 115 D.P.R. at 594. Being that Angel Vargas's wife has already litigated the issue now before this Court, Angel Vargas is likewise precluded from litigating in this federal forum.

For the reasons stated in this order and opinion, this Court finds that plaintiffs Margarita Sánchez Cruz, Dennisse Shepherd Fraser, Jahaira Cardona, Arcadio Aponte Agosto, María Calvente, Luis Vargas, Miguel A. Dávila, and Rosa Rodríguez currently lack standing to pursue this cause of action. Their federal causes of action are, therefore, DISMISSED WITHOUT PREJUDICE. This Court also finds that plaintiffs Nereida Morales Guadarrama, Crucita Pino Hernandez, and Angel L. Vargas are collaterally estopped from bringing the federal causes of action. Consequently, their federal causes of action are DISMISSED WITH PREJUDICE.[13]

against them. This issue, however, should have been raised in the state court proceeding.

13. Although the Court has dismissed this case based mainly on standing and ripeness issues as to eight of the plaintiffs and because of the doctrines of *res judicata* and collateral estoppel as to the other plaintiffs, on the merits there are serious 11th Amendment issues as to the PRDH, PRPHA, and Alemañy and Blakeman in their official capacity, namely, because Puerto Rico and its instrumentalities have not waived their immunity or consented to be sued under the 11th Amendment. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974). Puerto Rico is considered to be a state under the 11th Amendment, *Metcalf and Eddy Inc. v. Puerto Rico Aqueduct and Sewer Authority*, 991 F.2d 935, 939 n. 3 (1st Cir.1993), and the 11th Amendment immunity applies to state instrumentalities as the PRDH and PRPHA. *Castro v. Commonwealth of Puerto Rico*, 43 F.Supp.2d 186 (D.P.R.1999). The 11th Amendment further bars monetary relief against agencies or instrumentalities of states, *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and against officers of the state in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985), *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st

Cir.1987). Defendants Alemañy and Blakeman are therefore covered under the 11th Amendment umbrella in their official capacities. *Castro*, 43 F.Supp.2d 186. Defendants Alemañy and Blakeman may, however, have to remain in the case in their official capacity for equitable injunctive remedies. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Mills v. Maine*, 118 F.3d 37 (1st Cir.1997).

Further, the doctrine of qualified immunity may bar damages against the officials in their personal capacities as their discretionary actions or omissions might not be legally unreasonable in violation of a clearly established right. *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether Blakeman and Alemañy enjoy qualified immunity as to the facts of the instant case depends on the "objective legal reasonableness" of their actions, assessed in the light of the legal rules that were "clearly established" at the time that Blakeman and Alemañy acted. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), quoting *Harlow v. Fitzgerald*, 457 U.S. at 818–819[ 102 S.Ct. 2727]. Qualified immunity can be defeated if an official knew or reasonably should have known that his or her action would violate plaintiff's rights or if he or she took the actions with malicious intentions to deprive the plaintiff of

The dismissal of plaintiffs' federal claims leaves only plaintiffs' claims under Puerto Rico law. Pursuant to 28 U.S.C. § 1376(c) and *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the Court declines to exercise supplemental jurisdiction over plaintiffs' Commonwealth claims against the defendants. *See Rodriguez v. Doral Mortgage Corp.,* 57 57 F.3d 1168, 1177 (1st Cir.1995). "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplement state-law claims." *Id.* (Citations omitted).

Accordingly, the state law claims of plaintiffs Margarita Sánchez Cruz, Dennisse Shepherd Fraser, Jahaira Cardona, Arcadio Aponte Agosto, María Calvente, Luis Vargas, Miguel A. Dávila, and Rosa Rodríguez are DISMISSED WITHOUT PREJUDICE and the state law claims of plaintiffs Nereida Morales Guadarrama, Crucita Pino Hernandez, and Angel L. Vargas are DISMISSED WITH PREJUDICE.

his or her rights. *Harlow v. Fitzgerald,* 457 U.S. at 816[ 102 S.Ct. 2727]. The qualified immunity defense of Blakeman and Alemañy, although not necessarily mounted on the Rock of Gibraltar because there was no Supreme Court precedent at the time of the events, seems to be quite strong. Pursuant to *El Dia, Inc. v. Rossello,* 165 F.3d 106, 110 n. 3 (1st Cir.1999), precedents from other circuits that enjoy "persuasive force" may be used for quality immunity defense purposes. In *Chavez v. Housing Authority of City of El Paso,* 973 F.2d 1245 (5th Cir.1992), the "One Strike and You're Out" policy was held constitutional, thus, Blakeman and Alemañy acted in accordance following "clearly established precedent". Further, if the *Chavez* case is not given weight as a "clearly established precedent", then there is no precedent and thus no previously clearly established law exists; thus, the qualified immunity defense attaches. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Hence, either because there was a clearly established precedent allowing the action or because there was no precedent, the officials were authorized to act pursuant to the law of "One Strike and You're Out." *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).